**McDADE v. GREEN et al.** *

No. 4804.

Court of Appeal of Louisiana. Second Circuit.

Nov. 2, 1934.

H. B. Lingle, of Shreveport, Clifford E. Hays, of Minden, and R. H. Lee, of Benton, for appellant.

276

Murff & Perkins, of Shreveport, and Wallace & Hardeman, of Benton, for appellee.

TALIAFERRO, Judge.

In this case we are called upon to decide who, as between plaintiff and L. C. Carter, one of the defendants, is the lawful owner of the following described tract of land in Bossier parish, La., to wit: That portion of lot No. 13 (according to plat and survey prepared by Alexander & Davies, civil engineers, of record in Bossier parish), of section 11, township 16, range 12 west, which lies east and north of Flat river, and which contains 12.55 acres. By way of explanation, it may be well to add here that this lot 13 embraces all of the northwest quarter of southeast quarter of said section 11. When the original government surveys were made, this tract and many hundred acres adjacent were entirely covered by a shallow lake which is designated on the early plats as Red Shoot (Chute) Lake. After the erection of levees along Red river, cutting off annual passage of water therefrom into the lake, the lake dried up, excepting a small drain through the center thereof, now called Flat river or Flat river canal; and its bed, being fertile dirt, was thereby rendered susceptible to cultivation and became valuable for that purpose. All of the land lying within the bounds of the lake, after it became dry, were surveyed out by Alexander & Davies and the full forties and fractional forties were given lot numbers for identification. The Bossier Parish Levee Board sold to plaintiff and W. F. Taylor, in 1903, the land involved herein, and other tracts adjacent by metes and bounds description, and later on Taylor conveyed to plaintiff his interest therein. They put it in cultivation immediately after acquiring it, and continuously thereafter to present time it has been so utilized. That part of the lot 13 west of Flat river was never sold by the Levee Board. One D. R. Childers and his brothers owned some of the lots on west side of Flat river, opposite plaintiff's property, and other lands in that vicinity.

In the year 1929 the assessor of Bossier parish erroneously assessed to D. R. Childers, in conjunction with other lands, all of lot 13 of section 11, township 16, range 12, although Childers at no time owned any part of or interest in it. Under this assessment the lot was advertised for sale for delinquent taxes, and was adjudicated to plaintiff for $54.71, taxes, interest, and cost, on June 21, 1930. The status of things thus remained until on or about January 28, 1931, at which time defendant Green loaned to Childers the money needed to redeem the property, and they (Green and Childers) went to the office of W. B. Sapp, notary public, in Bossier city, Bossier parish, to have him prepare an instrument for plaintiff to sign for the redemption of the property from the tax deed, and a counter letter between Green and Childers whereby the latter would be protected, since it was decided to have plaintiff execute a deed of redemption to Green instead of Childers, to secure payment of the amount loaned to redeem the land. The notary, in good faith, being influenced by the contents of the counter letter and the declarations of the parties to him, instead of drafting a redemption deed for plaintiff to execute, prepared a full warranty sale conveying said lot 13 to Green for a cash price of $61.28. The following morning Mr. Sapp, accompanied by D. R. and A. J. Childers, went to plaintiff's plantation home, and there Sapp explained to him that Childers wanted to redeem the property and, as Green was advancing the money to do this, that it was decided to have the deed made directly from plaintiff to Green. This was all agreeable to plaintiff and he unwittingly executed the warranty deed of the land to Green, and was paid by Sapp $61.28, which covers the amount plaintiff paid for the property at tax sale, plus 12 per cent.; a reduction of 8 per cent. in the penalty having been made by McDade at the suggestion of D. R. Childers. This deed was promptly recorded on January 31. 1931. It is not dated. The counter letter is dated January 28, 1931. It is in notarial form and was signed by Green and A. J. Childers for himself and for his brothers, J. E. and S. R. Childers. It was not registered. In substance it declares that on the day of its date A. F. McDade had sold to A. E. Green, Jr. (defendant), lot 13 of section 11, township 16 north, range 12 west, in Bossier parish, containing 40 acres, "and being the same land acquired by vendor (McDade) at tax sale as belonging to S. R. Childers." It further recites:

"Now if the said A. J., J. E. or S. R. Childers, shall at any future date, pay the said A. E. Green, Junior, the sum of Sixty-one Dollars and twenty-eight cents representing the purchase price and including taxes paid on said property in the future, with eight per cent per annum interest thereon until paid, then and in that case the said A. E. Green, Junior, hereby agrees and binds himself to restore said described property to A. J., J. E. and S. R. Childers by quit claim deed."

Some time prior to July 9, 1932, plaintiff applied to some one to borrow money against his plantation, of which the 12.55-acre tract involved herein is a part, and it was then discovered, upon examination of his title, that he had conveyed this tract to McDade.

On Saturday, July 9, 1932, plaintiff and Green were in the office of Judge Murff, plaintiff's counsel, in city of Shreveport, where the controversy over this title was discussed at length. Plaintiff offered to pay to Green the $61.28 he had loaned Childers to redeem the tax sale, with interest, if he would reconvey the land to him, to which Green replied that he could not do so because he had given a counter letter to Childers, and was under obligation to deed it to him, and when asked if Childers' consent to this retransfer should be secured whether he would then reconvey to plaintiff, he replied that "he did not know." Judge Murff then asked Green not to make any disposition of the property while negotiations were pending looking to a settlement of the dispute, to which he replied that he would make no promises, and walked out of the office. On Monday, the 11th of July, he executed a warranty deed of the lot 13 to defendant Carter, expressing a cash price of $350. This deed was recorded on the 12th of July. Carter was not present when this deed was made to him and was not represented by any other person. He only learned of its execution through Green on his next visit to him in Texas. He was then working in the state of Texas. On the 18th of July this suit was filed by plaintiff against Green, Carter, and D. R. Childers. Its object, based upon appropriate allegations, is to have the conveyance from Green to Carter annulled and set aside as a simulation, purely and simply; fraudulently designed for the purpose of defeating petitioner's right and title to his property; and, in the alternative, if said transfer is in reality a sale, then it is fraudulent, having been executed to defeat plaintiff's suit and efforts to recover said land; that Green and Carter both were aware of the erroneous character of the deed to Green from plaintiff, and conspired to defraud him of his said property. Plaintiff also alleges that the warranty deed he executed to Green was signed by him in error of its true nature; that he was of the belief and understanding when he signed it that it was simply a redemption deed for the purpose of setting aside the tax deed to him of the property described therein; that he was ignorant of the fact that the land purchased by him at said tax sale was partly owned by him, but

thought he was purchasing land belonging to Childers to whom it was assessed.

The defendants Green and Childers, through counsel, answered the suit, but as they did not appeal from the judgment rendered against them by the lower court, the substance of such answers and the defenses urged by them will not be given in this opinion. As to them the judgment is final. Defendant Carter's answer is a general denial of all the allegations of fact and conclusions of law set up and relied on by plaintiff to recover title to the land sued for. He avers that if plaintiff committed any error to his prejudice that such cannot be invoked to defeat his title to said land, he having purchased the land on the faith of the public records and without knowledge of such error, if any existed; and paid Green $350 therefor. ·

The lower court gave judgment for plaintiff and against Green and Carter, annulling the purported sale between them of the land in dispute because of its simulated character; and gave judgment against Green and Childers, in so far as Childers was concerned, annulling and setting aside the purported sale of said property by plaintiff to Green, on the grounds of error and misunderstanding of all the parties, upon the payment by plaintiff to Green of $61.28 with legal interest from July 31, 1931, until paid. Plaintiff was recognized to be the lawful owner of that part of lot 13 of section 11, township 16 north, range 12 west, as per the Alexander & Davies survey, lying east and north of Flat river.

Defendant Carter appealed from this judgment.

### Opinion.

The attack, on the grounds of error, made by plaintiff on the deed he gave Green to lot 13, is conclusively sustained. The proof of error is self-evident. All parties concerned were in error in one or more respects as relates to the tax deed and its redemption. Childers had no interest whatever in effecting a redemption of the land from the tax sale to McDade. He and his brothers never at any time owned any part of the land. No taxes whatever were due on the tract, as the part west of the river was owned by the Levee Board and therefore exempt from taxation, and plaintiff had previously paid the 1929 taxes on the part of the lot owned by him. Green would not have advanced Childers money to erase the tax sale and hold the land as security for his money had he known the true status of its title; and certainly plaintiff never intended to pur-

chase his own land at tax sale or transfer it to Green for the mere $61.28 he was paid by Childers, when it is shown that it is worth several hundred dollars.

"Error as to the principle cause of a contract, no matter how or by whom induced, vitiates consent and invalidates the contract." Lawrence v. Mt. Zion Bap. Church, 1 La. App. 404; Civ. Code, arts. 1819, 1820, 1821; Theriot v. Chaudoir et al., 17 La. 445.

The facts in Calhoun v. Teal, 106 La. 47, 30 So. 288, are not on all fours with those in the instant case, but the legal principles upon which the decision in that case turned, enunciated in its syllabus, have peculiar application here. The syllabus is:

"Where there exists error of fact, proceeding either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none, and this error was the principal cause of, and bore upon the motive for, yielding consent to a certain business agreement, relief against it may be had."

The record discloses with equal certainty that Green acted with fraudulent motives and sinister designs when he executed the deed to Carter within 48 hours after he was apprised of the erroneous nature of the deed plaintiff had given him. He declined to join in the effort being made by plaintiff and his counsel to rectify the error into which plaintiff had fallen, for the reason, as stated by him, he was obligated to Childers by the counter letter he had signed, and refused to promise not to further complicate the situation by transferring the property to any other person. Carter, it is shown, is a cousin of Green's wife. He lived at Green's home at times and worked under Green in a pipe line crew. Carter, it is further disclosed, could not have identified this lot 13 when the deed was made to him, and it is disclosed that neither he nor Green at any time sought possession thereof personally, or through others. The cash price of $350 stated in the deed was not paid then or at any other time thereafter. The deed from Green to Carter is ex parte. It is what might be appropriately termed a unilateral simulation. One cannot convey real estate to another by valid deed without the reputed vendée having knowledge of the sale to him or consenting thereto at the time or prior to its execution. There is no such thing as a sale without a purchaser. There must be a vendee to buy as well as a vendor to sell, in all valid sales. There must be at least two persons to every commutative contract—there must be a meeting of minds. Civ. Code, art. 1779. The deed to Carter being a simulation ab initio, conceived deliberately by Green as the intended means to defraud plaintiff of his land, no act or acts of Green or Carter, singly or in concert, thereafter could breathe into that instrument legal effect or existence.

Green and Carter, evidently realizing the unreasonableness as well as the absurdity of the position they would find themselves in when defending this purported deed of Green's produced and filed in evidence an instrument, dated May 15, 1932, whereby Green, for $20 cash, sold to Carter the option to purchase said lot 13, until August 15, 1932, for the price of $350. There are no witnesses to this document. Green says he had it prepared in Henderson, Tex., and then contacted with Carter out in the country working and they both signed it. This happened less than 60 days before Green executed the deed to Carter. On this date Green was of the belief, and correctly so, on account of the counter letter, that he was obligated to reconvey the land to Childers. This option was evidently drawn in Bossier parish. It is headed, "State of Louisiana, Parish of Bossier." Had it been drawn and signed in Texas, a different form would most likely have been used. These defendants contend that it was to meet the conditions of this option that Green made the deed to Carter, that at the time Green was due Carter $330 for borrowed money, and that he paid Green $20 additional in cash. If this were true, why give the option? Why not then execute a deed? In view of the close relationship, business and family, between these two men, and in view of Carter's loaning Green so much money without security or showing, why would they deem it necessary to sign the option between them? In the effort to strengthen their already weak position, defendants, by introducing this option, weakened it.

We think the judgment of the lower court eminently correct, and it is affirmed, with costs.