740 So.2d 173 (1999)
Thomas J. RIDGEDELL and Gloria Wesley Ridgedell,
v.
SUCCESSION OF Cora Mae Himel KUYRKENDALL, Carolyn Gregoirie[1] Hendry, Leslie Carolyn Hendry Smith, Kirk Hawthorne Hendry, and Wallace O. Hendry, Jr.
No. 98 CA 1224.
Court of Appeal of Louisiana, First Circuit.
May 19, 1999.
*175 Joseph Simpson, Amite, LA, for plaintiff/appellee Thomas Ridgedell.
James Dukes, Hammond, LA, for defendant/appellant Wallace O. Hendry, Jr.
BEFORE: FOIL, KUHN, and WEIMER, JJ.
WEIMER, J.
The plaintiffs, Thomas J. and Gloria Wesley Ridgedell, brought this action to have a 1978 act of sale of immovable property from James O. Kuyrkendall to his step-son, Wallace O. Hendry, Jr., appellant herein, declared void because it was a simulation.
Mr. Hendry filed exceptions of no right and no cause of action, which the trial court denied. Mr. Hendry applied for supervisory writs to this court, which this court denied without reasons.[2] The Louisiana Supreme Court also denied writs. Next, Mr. Hendry filed an exception of non-joinder of indispensable parties, which was also denied. Thereafter, Mr. Hendry filed an answer and reconventional demand. The reconventional demand names the Ridgedells as defendants in reconvention *176 for purporting to possess the property Mr. Hendry received title to in the 1978 act of sale,[3] and seeks a "full accounting and settlement" of his interest in the property as well as damages for wrongful possession.
Plaintiffs moved to have their previously filed motion for summary judgment set for hearing. After a hearing, the trial court rendered judgment in plaintiffs' favor, declaring the 1978 sale "null and void." Mr. Hendry perfected this suspensive appeal.
Finding plaintiffs do not have a right of action, we reverse and dismiss with prejudice plaintiffs' demand against defendant, Wallace O. Hendry, Jr., as the vendee in the 1978 act of sale.

CHAIN OF TITLE
In 1978, James O. Kuyrkendall signed a document titled "an act of sale" which transferred an undivided one-fourth interest in property he owned to his step-son Wallace O. Hendry, Jr. Mr. Hendry never signed the document and was not aware he was named in the document until 1996.
An explanation of the chain of title to the property claimed by the parties is necessary for a complete understanding of the issues raised in this appeal. This contest over title to immovable property involves what was originally one tract of land that was conveyed from the owners to others in undivided fractional shares. The parties do not dispute that the conveyance records of Tangipahoa Parish contain records showing the following conveyances.[4]
All of the parties in the instant case trace their claimed titles to the property to Albert S. Bishop and Mattie F. Bishop, record owners on November 25, 1968, of a tract of land in Tangipahoa Parish, Louisiana.
On November 8, 1971, the Bishops conveyed the tract of land to Marion H. Hendry, Jr. and Joyce Stanley Hendry and to James O. Kuyrkendall and Cora Mae Himel Kuyrkendall,[5] with each couple receiving an undivided one-half interest. On July 17, 1973, Marion and Joyce Hendry conveyed their undivided one-half interest to Hawthorne Dennis Hendry and Carolyn Gregoire Hendry and to James O. Kuyrkendall and Cora Mae Himel Kuyrkendall, with each couple receiving an undivided one-fourth interest. Thus, Hawthorne Dennis Hendry and Carolyn Gregoire Hendry owned an undivided one-fourth interest in the tract and James O. Kuyrkendall and Cora Mae Himel Kuyrkendall owned an undivided three-fourths interest in the tract.
Upon the death of Hawthorne Dennis Hendry, the undivided one-fourth interest that he and his wife owned vested in his widow, Carolyn Gregoire Hendry, and his children, Leslie Carolyn Hendry and Kirk Hawthorne Hendry, who became record title holders on January 30, 1995.
On April 18, 1978, James O. Kuyrkendall caused to be recorded the disputed act of sale to Wallace O. Hendry, Jr., which transferred an undivided one-fourth interest in the property he and his wife acquired from the Bishops and from Marion and Joyce Hendry.[6]
*177 On July 21, 1981, Wallace O. Hendry, Jr., along with other family members, executed an oil, gas, and mineral lease involving the subject property. The contract recognizes Mr. Hendry's "separate and paraphernal property."
Following the death of James O. Kuyrkendall, in a judgment of possession in the Succession of James O. Kuyrkendall dated January 6, 1995, his widow, Cora Mae Himel Kuyrkendall was placed in possession of a three-fourths undivided interest in the property. Apparently, no mention was made of the disputed act of sale from James O. Kuyrkendall to Wallace O. Hendry, Jr.
On March 24, 1995, Cora Mae Himel Kuyrkendall, Carolyn Gregoire Hendry, Leslie Carolyn Hendry Smith, and Kirk Hawthorne Hendry sold to the Ridgedells their interests in the property. Wallace O. Hendry, Jr. was not a party to this transaction.
Thereafter, as the Ridgedells began to sell portions of the property, they were informed of the 1978 recorded act of sale from Mr. Kuyrkendall to appellant. This law suit followed.
It is undisputed that nothing impeded Carolyn Gregoire Hendry, Leslie Carolyn Hendry Smith, and Kirk Hawthorne Hendry from conveying their undivided one-fourth interest in the property to the Ridgedells. The dispute arises over the undivided portion conveyed by Cora Mae Himel Kuyrkendall.[7] According to the Ridgedells, Mrs. Kuyrkendall could and did convey a three-fourths undivided interest, because the 1978 recorded sale to appellant is a null and void simulation. According to appellant, his mother, Cora Mae Himel Kuyrkendall was able to convey only what she owned, and she could not convey the undivided one-fourth interest conveyed to appellant in the 1978 recorded sale to him from his step-father, James O. Kuyrkendall.

PEREMPTORY EXCEPTIONS
The issue raised by the peremptory exception raising the objection of no right of action is whether plaintiff belongs to a particular class to which the law grants a remedy for the particular harm alleged. The exception of no right of action tests whether the particular plaintiff falls, as a matter of law, within the particular class to which the law grants a remedy for the particular harm alleged. See LSA-C.C.P. art. 927(5); Stafford Construction Company, Inc. v. Terrebonne Parish School Board, 612 So.2d 847, 851 (La.App. 1 Cir.1992), writ denied, 614 So.2d 82 (1993). The exception asks the question: can this plaintiff assert this particular cause of action? This exception is a threshold device to terminate a suit brought by one who has no interest in enforcing judicially the right asserted. Stafford, 612 So.2d at 851. Evidence supporting or controverting the exception is admissible, but the exception of no right of action cannot be used simply because there may be a valid defense to the proceeding. To prevail on the exception of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 95-1784, pp. 5-6 (La.App. 1 Cir. 4/4/96), 672 So.2d 356, 359. Because this is an appeal of summary judgment granted in the plaintiffs' favor, we have before us the record which includes all of the pleadings and affidavits. We can and will review the entire record to determine whether the Ridgedells have a right of action.[8]
*178 In considering the peremptory exception of no right of action, we must look to the substantive law involved. See Keen v. Louisiana Farm Bureau Insurance Company, 583 So.2d 835, 836-837 (La.App. 1 Cir.), writ denied, 587 So.2d 699 (1991). Thus, we address the substantive law of an "action en declaration de simulation" as reflected in the statutes and jurisprudence.

SIMULATION
"A contract is a simulation when, by mutual agreement, it does not express the true intent of the parties." LSA-C.C. art. 2025. A unilateral act, such as an act of sale, addressed to a specified person, such as a named vendee, is a simulation when, by agreement between the vendor/author of the act and the named vendee, the act is not meant to produce effects. See LSA-C.C. art. 2025, Comments (c). "If the true intent of the parties is expressed in a separate writing, that writing is a counterletter." LSA-C.C. art. 2025. "A simulation is absolute when the parties intend that their contract shall produce no effects between them. That simulation, therefore, can have no effects between the parties." LSA-C.C. art. 2026. The true intent of the parties to an absolute simulation is given effect when, for example, an apparent transferee confirms by counterletter that the subject property still belongs to the transferor. LSA-C.C. art. 2026, Comments (b). The apparent transferor may not attack an absolute simulation in the absence of a counterletter[9]. Id. "Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement." LSA-C.C. art. 1848. Although testimonial or other evidence is admissible to prove an absolute or relative simulation, the nature of the simulation may determine whether only third persons, or the parties to the simulated act themselves, may avail themselves of such evidence. In any case, proof of simulation cannot affect the rights of third persons who have relied on the public records. LSA-C.C. art. 1848, Comments (c). "A simulation is relative when the parties intend that their contract shall produce effects between them though different from those recited in their contract. A relative simulation produces between the parties the effects they intended if all requirements for those effects have been met." LSA-C.C. art. 2027. "Any simulation, either absolute or relative, may have effects as to third persons." LSA-C.C. art. 2028.
An example of an absolute simulation is an act whereby the parties make an apparent sale, but actually intend that the vendor will remain owner. The Louisiana jurisprudence distinguishes "sham transactions," which have no effect at all, from "disguised donations," which are intended by the parties to be valid, but are not represented as donations on their face. LSA-C.C. art. 2026, Comments (a) and cases cited therein. Although an absolute simulation is without effect between the parties, its lack of effect may not be asserted against third persons, such as creditors and bona fide purchasers. LSA-C.C. art. 2026, Comments (c).[10]
The question in the instant case is whether the plaintiffs, who trace their title from the purported vendor, *179 James O. Kuyrkendall, instead of the purported vendee, appellant Wallace O. Hendry, Jr., have a right of action to have the act of sale declared a simulation. We address the question keeping in mind the two types of simulations, absolute and relative, and the differences between them. In an absolute simulation, the parties pretend to transfer property from one to the other, but they intend that the transferor retain ownership. In a relative simulation, a sale appears to be valid on its face, but is intended by the parties to be a gift rather than a sale. See Owen v. Owen, 336 So.2d 782, 786 (La.1976); Bonnett v. Mize, 556 So.2d 228, 231 (La.App. 2 Cir.), writ denied, 559 So.2d 1360 (1990).
A further evaluation of the of simulations is required. The treatment of simulations in the Louisiana statutes and jurisprudence is the subject of Thomas B. Lemann's detailed analysis, `Some Aspects of Simulation in France and Louisiana,' 29 Tul.L.Rev. 22 (1954).[11] In the author's discussion, "A" is the supposed transferor of immovable property and "B" is the supposed transferee. Persons who trace their titles to A and B are called "derivatives." The interests of derivatives of A are to have the transfers declared null, while the interests of derivatives of B are to have it determined that the acts transferred title.
Mr. Lemann discusses absolute simulations as they have been handled in: contests between A and B, the parties to the simulation; contests between A and various derivatives of B; contests between B and various derivatives of A; and contests between derivatives of A and derivatives of B. In the instant case, plaintiffs are derivatives of A (the supposed transferor) and their claim is against B (the supposed transferee). However, Mr. Lemann's analysis of contests between A and B is a pertinent threshold consideration.
The law imposes a strict rule of evidence in contests between the parties to a simulation: only written proof will suffice to establish the true agreement where one party disputes it. In a non-transfer simulation the world sees the apparent contract, but does not see the verbal or written secret contract that expresses the true will of the parties. The law requires written proof of the true will of the parties because the courts have been unwilling to allow themselves to be open to a potential contest of veracities every time property is sold. 29 Tul.L.Rev. at 29.
It can be said unequivocally that a supposed transferor cannot establish a simulation unless he produces a written counterletter. 29 Tul.L.Rev. at 31. See Sherman v. Nehlig, 154 La. 25, 97 So. 270 (1923). Counterletters and answers to interrogatories, which are their equivalent, are admissible evidence; the testimony of witnesses is not LSA-C.C. art. 2026, Comments (b); Litvinoff, `The Law of Obligations,' Louisiana Civil Law Treatise, p. 399 ("If the simulation is absolute, that is, if the parties intended that their act should produce no effects between them, testimonial proof that the written act is actually a simulation may not be admitted when the apparent or simulated act contained in a writing purports to effect a transfer of immovable property.") The issue of whether the sale was simulated is an issue of fact, but it cannot reach the court because all non-written evidence bearing on the issue is excluded by operation of law, and the written evidence is so unequivocal as to be conclusive of the facts. Thus, in contests between A and B, no questions of fact are presented, but only questions of law.
Mr. Lemann observes that most of the controversies involving simulation occur between B and the derivatives of A, as in the instant case. 29 Tul.L.Rev. at 40. Mr. Lemann discusses three types of derivatives of A.
*180 The first type is creditors of A, who can assert rights, such as the ability to use evidence other than a counterletter or interrogatories, that are greater than the rights A could use. The rationale for granting creditors greater rights is that the supposed transfer was made in derogation of their rights. But the Ridgedells are not creditors of A.
The second type of derivatives of A are forced heirs, whose cases often involve collation. Since neither the Ridgedells nor the appellant is an heir of Mr. Kuyrkendall, this situation is not pertinent. Further, most cases of simulations attacked by forced heirs involve disguised-transfer simulations, which are relative simulations. 29 Tul.L.Rev. at 49.
The third type of derivatives of A are ordinary heirs or universal successors of A. A universal successor is defined by LSA-C.C. art. 3506(28) as one who represents the person of the deceased, and succeeds to all his rights and charges. The Ridgedells purchased from Mr. Kuyrkendall's universal successor, Mrs. Kuyrkendall; therefore, their rights in bringing this claim against Mr. Hendry can be no greater than her rights.
It is clear that ordinary heirs or universal successors of A, the transferor, must stand squarely in his shoes, and therefore should not have the privilege of advancing any kind of evidence that would have been denied A himself. 29 Tul. L.Rev. at 47. In Willis v. Gordon, 143 So.2d 798, 804 (La.App. 1 Cir.1962), this court considered the situation of a purported vendor urging she had received no consideration for the sale after the death of the purported vendee. This court noted the limitations upon a supposed vendor in attacking her own purported sale, and quoted the following language from McGee v. Finley, 65 So.2d 384, 388 (La.App. 2 Cir.1953), as "full answer" to her claim:
It has been repeatedly held by our courts that a vendor's acknowledgment in an authentic act of sale that he received a stipulated sum in cash as consideration of the transfer is conclusive as to him unless he alleges and can prove that his consent and his signature to the act were procured by fraud, error or force. See Templet v. Babbitt, 1941, 198 La. 810, 5 So.2d 13. Parties to authentic acts may, even in the absence of fraud and error, assail the verity of the recitals of the deed, either by a counter letter or through answers of the other parties to interrogatories on facts and articles which have the same force and effect as a counter letter. Article 2239, LSA-Civil Code.
Both McGee and Willis stand for the proposition that the Ridgedells cannot avail themselves of any evidence other than a counterletter or answers to interrogatories.
However, categorizing the Ridgedells as derivatives of James 0. Kuyrkendall ignores another very important category into which they fall: that of third party purchasers. Mr. Lemann states: "Purchasers of immovable property from A could hardly be in good faith if B is the record owner, and no cases in this category have arisen involving B's forced heirs."[12] 29 Tul.L.Rev. at 59. The public records doctrine, although it does not create title in one who has no title, exists to uphold the stability of titles to immovable property. Thus, third party purchasers are subject to the following rules:
A third party dealing with property is charged with knowledge revealed by recorded instruments affecting property. Blevins v. Manufacturers Record Publishing Co., [235 La. 708], 105 So.2d 392 (La.S.Ct.195[7]). `It is also the law that all persons have constructive notice of the existence and contents of a recorded instrument affecting immovable property *181 (United Gas Public Service Company v. Roy, et al., 147 So. 705 (La.App. 2d Cir.1933)); and where such an instrument contains language that fairly puts a purchaser on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts he is to be considered as having bought at his own risk as having bought at his own risk and peril.' Breaux-Renoudet Cypress-Lumber Company v. Shadel et al., [[5]2 La. Ann.2094], 28 So. 292 (La.S.Ct.1900); Hasslocher, et al. v. Recknagel, et al., 160 So.2d 421 (La.App. 2d Cir.1964); Brown v. Johnson, 11 So.2d 713 (La. App. 2d Cir.194[2]); Judice-Henry-May Agency, Inc. v. Franklin, 376 So.2d 991 (La.App. 1st Cir.19[79]).
Hollier v. Galtier, 430 So.2d 376, 379 (La. App. 3 Cir.1983).
It was noted in Hollier, that the third party purchaser was presumed to have known that the vendor could not have intended to sell that which he no longer owned. Additionally, the court noted the third party purchaser could not have intended to purchase property from one not the owner thereof. Id. at 380. The Ridgedells cannot claim they were misled by the public records as they would be able to do if they had been third party purchasers from Mr. Hendry instead of Mr. Kuyrkendall. If that were the case, the Ridgedells would clearly have a right of action. 29 Tul.L.Rev. at 35.
In McGee v. Finley, 65 So.2d 384, 388 (La.App. 2 Cir.1953), there is language that is instructive as to what is required to state a right of action for simulation in a factual situation such as the instant case presents:
[P]laintiffs are not forced heirs nor can they rely upon a counter letter or interrogatories on facts and articles for the purpose of contradicting the recitals of the authentic act. They are relegated to the production of evidence to show that the signature of [vendor] was obtained by some manner of artifice or fraud.
It is clear the Ridgedells are in the same position as the plaintiffs in Hollier. It would be a stretch of imagination to think they could make allegations of fraud when their attack on the act of sale Mr. Kuyrkendall caused to be recorded comes some 17 years after that recordation and long after Mr. Kuyrkendall's death.
In their brief to this court, the Ridgedells assert that if the 1978 act of sale was not an absolute simulation, it was a relative simulation, that is, a donation in disguise because Mr. Hendry did not pay the consideration stated in the act. We fail to see how a finding of a donation in disguise would assist the Ridgedells, as a relative simulation transfers title to the named vendee, which is the situation the Ridgedells are attempting to avoid. Because the Ridgedells would not benefit by a finding of a relative simulation, they do not have a right of action to bring suit for such a declaration.
Further, as to disguised transfer simulations, because Mr. Hendry was not a forced heir, Mr. Kuyrkendall could make any gifts he wished of the disposable portion, excepting always gifts against public order, and he was able to disguise them as sales if he wished. There is no authority for disturbing disguised donations made to outsiders capable of receiving, except by forced heirs to the extent of impingement. 29 Tul.L.Rev. at 52. Therefore, the Ridgedells have no right of action to have the deed declared a relative simulation.
The plaintiffs rely on Mr. Hendry's answer to interrogatories and to the affidavits of record for proof of the fact that Mr. Hendry did not know Mr. Kuyrkendall had executed and recorded the act of sale until he was informed of such after the purchase by the Ridgedells. They state that "if Hendry had no idea that the Cash Deed was even in existence, Hendry could not have intended the Cash Deed to produce any effects between Kuyrkendall *182 and Hendry." Far from helping their case, this fact weakens it. Article 2025 of the Louisiana Civil Code requires a "mutual agreement" of the parties to the contract to create a simulation. The Ridgedells have proved the contrary: that there was no agreement between Mr. Kuyrkendall and Mr. Hendry to create a simulation, that is, no agreement that the actual act of sale executed by Mr. Kuyrkendall not express the true intent of the parties.[13] The Ridgedells cite McDade v. Green, 157 So. 275 (La.App. 2 Cir.1934) for the proposition that there must be a vendee as well as a vendor to a sale. That proposition is not tantamount to saying the vendee must sign the act of sale. Thus, if there was a prior agreement between Mr. Kuyrkendall and Mr. Hendry for the sale, it is immaterial that Mr. Hendry did not know of the actual deed until years later. This argument of the Ridgedells is without merit.
Finally, the Ridgedells argue the jurisprudence states any person in interest may bring an action for simulation. They cite: Succession of Terral, 312 So.2d 296, 299 (La.1975); Hogan v. McKeithen, 527 So.2d 982, 987 (La.App. 2 Cir.1988); and Williams v. Smith, 340 So.2d 401 (La.App. 2 Cir.1976). Succession of Terral contained a statement that a simulated contract may at any time, and at the demand of any person in interest, be declared a sham, but it was a case brought by heirs of the apparent vendor. Likewise, Hogan was brought by heirs of the apparent vendor. The courts' mention of any person in interest is overly broad and dicta, considering the cases involved actions by heirs. Williams was a community property case and not on point here.[14]
Further, the Ridgedells are not bonafide purchasers because of the recorded deed. Proof of simulation cannot affect the rights of third persons who have relied on the public records. See LSA-C.C. art. 1848, Comments (c), citing Chachere v. Superior Oil Co., 192 La. 193, 187 So. 321 (1939) and McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). However, the Ridgedells did not rely on the public records; they failed to find the recorded deed to Mr. Hendry prior to purchasing the property. Even where there is a presumption of simulation, as when the property purportedly conveyed remains in the possession of the seller, the law of recordation precludes persons such as the Ridgedells from invoking the presumption. LSA-C.C. art. 2480, Comments (a).[15]
Regardless of language in the cases plaintiffs cite, the plaintiffs have failed to cite, and we have not found, any cases *183 which hold that persons such as the Ridgedells, who are neither creditors, nor forced heirs, nor bona fide purchasers from the record title holder, Wallace O. Hendry, Jr., are "persons in interest" who can bring an action for simulation. Thus, the Ridgedells have no right of action.
A review of the public records clearly and unmistakenly indicates Wallace O. Hendry, Jr. acquired a one fourth interest in the property at dispute from James O. Kuyrkendall. Additionally, Wallace O. Hendry, Jr. subsequently signed a mineral lease relative to this same property and this is also contained in the public records. Consequently, an examination of the public records would have indicated Wallace O. Hendry, Jr. owned an interest in the property in question. That fact, coupled with the law cited above, prevents the Ridgewells from having a right of action to have the sale declared a simulation. Because this action involves immovable property, the principles of recordation apply. LSA-C.C. art. 2035.
Accordingly, we reverse the judgment of the trial court, and dismiss with prejudice the Ridgedells' petition to declare the 1978 sale to Mr. Hendry a simulation.[16] We assess the Ridgedells with costs of this appeal and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.[17]
NOTES
[1] This name is spelled as above in the caption of this case. However, we note Mrs. Gregoire's signature has the spelling `Gregoire.' That is the spelling we will use hereafter.
[2] A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. Dupre v. Maynard, 96-1183, p. 3 (La.App. 1 Cir. 3/27/97), 692 So.2d 36, 38 writ denied, 97-1508 (9/26/97), 701 So.2d 986. Therefore, we are not barred from considering these exceptions, which Mr. Hendry re-urges on appeal. See also LSA-C.C.P. art. 927 B.
[3] Mr. Hendry also lists as defendants in reconvention the purchasers of two parcels of land from the Ridgedells, as well as the Ridgedells' mortgagee and the Succession of James O. Kuyrkendall. They are actually third party defendants instead of defendants in reconvention.
[4] Information regarding the chain of title is provided in Mr. Hendry's answer to the petition of plaintiffs, and a chart of the title is provided by appellant in his brief. Because appellees do not dispute any of the information and because the information is considered for discussion only, we summarize it here.
[5] Cora Mae Himel Kuyrkendall was the mother of the appellant, Mr. Wallace O. Hendry, Jr., and her husband, James O. Kuyrkendall, was his step-father.
[6] Because James and Cora Lee Kuyrkendall owned a three-fourths (six-eighths) interest, that is, a three-eighths interest each, he could convey a one-fourth (two-eighths) interest without affecting her three-eighths interest.
[7] Following the sale to the Ridgedells, Mrs. Kuyrkendall died. Consequently, her succession is named as a party defendant in the Ridgedell suit.
[8] We note that at the time the trial court overruled Mr. Hendry's exception of no right of action, and at the time this court declined to exercise its supervisory jurisdiction, the record was devoid of the documents which it now contains and which are helpful in determining the issue.
[9] In one case cited in the Ridgedells' brief, Trentacoste v. Elmer, 480 So.2d 1054 (La.App. 5 Cir.1985), writ denied, 481 So.2d 1336 (1986), the transferor successfully challenged the purported sale, but there were admissions by all the parties that no consideration was paid and such admissions were tantamount to a counterletter.
[10] Thus, if appellant had conveyed the one fourth share he purportedly received in the 1978 act of sale to bona fide purchasers, the purchasers' title could not be defeated by his subsequently urging the sale was a simulation.
[11] Mr. Lemann's thorough treatment of the subject of simulation is cited by Professor Litvinoff in `The Law of Obligations,' Louisiana Civil Law Treatise, at p. 399, and in the Louisiana Civil Code Revision Comments, LSA-C.C. art. 2026, Comments (b).
[12] Our research has failed to reveal any cases since 1954, the date of Mr. Lemann's article, that fall into this category or that entail third party purchasers proceeding against B himself.
[13] The fact that Mr. Hendry did not know of the execution of the act of sale is not tantamount to his not knowing of the sale itself. Mr. Hendry's opposition to the motion for summary judgment includes evidence that he and Mr. Kuyrkendall had agreed to the sale and that he paid consideration for the land, but that he was unaware Mr. Kuyrkendall had actually executed the necessary document. Although it is necessary that the vendor sign the act of sale, it is unnecessary that the vendee do so, because the vendee's acceptance may be proven by conduct of the vendee. Franks v. Scott, 191 So. 175, 178 (La.App. 1 Cir.1939).
[14] We note that in denying the exception of no right of action, the trial court mentioned the Ridgedells could assert any right the seller, Cora Mae Himel Kuyrkendall, could have asserted to have the sale declared null. Our review of the record fails to reveal how Mrs. Kuyrkendall could have attacked the sale. As we stated previously, the sale did not purport to transfer any of her three eighths interest in the property. Further, she was not a creditor of Mr. Kuyrkendall, nor his forced heir whose legitime had been impinged.
[15] Louisiana Civil Code art. 2480 provides: `When the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation, and, where the interest of heirs and creditors of the seller is concerned, the parties must show that their contract is not a simulation.'

Comments (a) states: `This Article reproduces the substance of Article 2480 of the Louisiana Civil Code of 1870. It clarifies the law by changing the reference from `third persons' to `heirs and creditors of the seller', since the interest of other third persons is subject to the rules of recordation.'
[16] Pursuant to LSA-C.C.P. art. 934, the Ridgedells are afforded the right to amend their petition within 30 days of issuance of this opinion to assert any other right of action.
[17] One cannot help but wonder why this matter cannot be resolved based on the law of partition. See generally, LSA-C.C.P. art. 4601, et seq. and LSA-C.C. art. 797, et seq.