hKOSTELKA, J.
Harold Melton (“Melton”) and Millennia Group, L.L.C. (“Millennia”) appeal the trial court judgment which ordered specific performance of a residential Buy/Sell Agreement (“the agreement”). We amend the judgment, and as amended, affirm.
Facts
On September 26, 1997, Melton and Kimberly and Edward Campbell (“Campbell”) entered into the agreement for the purchase of a home in Shreveport, Louisiana. Melton, the seller of the residence, secured the services of Lynn Roos (“Roos”), a real estate broker, to sell the home. At the time of the agreement, however, Roos served as the dual agent for both Melton and Campbell. Generally, the agreement provided that the home was to be sold “as is” as of the closing date “on or before December 8,1997.” Additional provisions of the contract provided for acceptable roof, foundation and mechanical system structural reports and that “any single mechanical item repair that exceeds $2000.00 the Seller has the option to repair or the contract will be null & void.... ”
On October, 21, 1997, Campbell informed Melton that structural reports revealed the cost to remedy the problems discovered would be in the “$25,000-$40,000 range.” In response to this letter, Melton sent a facsimile transmission (“fax”) to Campbell on October 27, 1997, in which he suggested that Campbell find another residence and “exercis[ed][his] option under the ‘Additional Provisions’ paragraph of the 9-26-97 sales agreement (10241 Ellerbe Road) to declare it null and void.”
On October 28, 1997, Campbell faxed Melton a letter in which he explained that he believed the additional provisions clause gave Campbell, 12not Melton, the option to nullify the contract. He additionally assured Melton of his intent to take the house “as is” but expressed concern over several items which had been revealed in the structural reports which he estimated would cost approximately $15,000 to remedy. On October 29, 1997, Melton forwarded a certified letter to Campbell again claiming the additional provisions clause, by its own terms, gave him the option to nullify the contract upon his declining to make repairs in excess of $2,000.
On October 30, 1997, Campbell’s attorney forwarded Melton a certified letter once more stating that Melton’s interpretation of the additional provisions clause was erroneous and that Campbell “intend[ed] to close on the purchase of the property in accordance with and under the subject Buy/Sell Contract on or before December 8, 1997.... ” The attorney also explained that if Melton did not participate in the sale closing, legal action would be instituted. Including essentially the same information, Campbell’s attorney transmitted a letter to Melton’s attorney on November 3, 1997. When Melton did not respond to the correspondence, Campbell’s attorney sent another letter to Melton and his attorney on November 5, 1997, in which he reiterated Campbell’s willingness to participate in the sale of the property “in accordance with the terms and provi *238 sions of the Buy/Sell Agreement ... on or before December 8, 1997 .... ” and intent to assert his legal rights to enforce the contract in the event Melton did not execute the sale of the property. Further pre-sale correspondence from the sale closing attorney to Melton, which included a settlement statement reflecting no deductions for repairs and informing him lathe closing date was set for December 2, 1997, prompted no response from Melton.
Melton’s failure to appear at the December 2, 1997 closing precipitated further correspondence from Campbell’s attorney to Melton and his attorney on December 4, 1997. The letter described Melton’s actions as “legal breaches and violations of the above referenced Buy/Sell Agreement dated September 26, 1997 -” which entitled Campbell to file suit against Melton unless he complied with the sale agreement within five days of the letter. When Melton failed to do so, Campbell instituted suit for breach of contract and specific performance and filed a Notice of Lis Pen-dens on December 18,1997. In his answer to the petition, on January 29, 1998, Melton included a reconventional demand against Campbell seeking attorney fees.
On December 23, 1997, Melton sold the residence to Millennia through its Manager, John Hensarling (“Hensarling”), who moved into the residence. On that same day, Millennia sold a portion of the property to Huey and Melanie McGaha (“McGa-ha”). On April 28, 2000, Campbell amended the petition to add Millennia[1] and McGaha as defendants to the suit.
On May 10, 1999, Melton sought a motion for summary judgment on the grounds that the additional provisions clause was unambiguous as a matter of law and provided that based upon the discovery of any single |4mechanical cost over $2,000, Melton had the option to repair it or the contract, by its own terms, would be null and void.[2]
Campbell followed with a motion for summary judgment on August 24, 1999 arguing that they possessed the option to void the contract and when they elected not to do só, Melton was bound to sell them the house for $400,000 by December 8,1997.
In separate judgments, the trial court denied both motions for summary judgment on December 6, 1999. The two-day trial of the matter commenced on June 14, 2000.[3] After hearing the testimony and reviewing the evidence, the trial court ruled in favor of Campbell finding Melton had breached the agreement. Resultantly, the court ordered Melton to convey full, complete and unencumbered title of the property to Campbell and nullified all property rights acquired by Millennia and McGaha and assessed Melton with attorney fees and court costs. This appeal ensued.
Discussion

Contract Provisions

An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to *239 sell. Such an agreement gives either party the right to demand specific performance. A contract to sell must set | Kforth the thing and the price, and meet the formal requirements of the sale it contemplates. La. C.C. art. 2623.
The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
In this case, it is undisputed that Melton and Campbell entered into a valid agreement on September 26, 1997. At trial, all parties agreed that it was their intent to buy and/or sell the residence for a price of $400,000 on or before December 8, 1997. Nevertheless, difficulties arose due to the parties’ interpretation of the additional provisions clause of the agreement. On appeal, we are faced with the task of interpreting this provision and determining its effect upon the parties’ rights.
Both Melton and Campbell frame their arguments around the interpretation of the second portion of the additional provisions clause, i.e., which party had the option to nullify the contract under certain circumstances. Nevertheless, because we find that the option to repair portion of the clause resolves the issues presented, it is unnecessary to address the ambiguity of the entire provision. As pointed out above, the additional provisions clause states that “any single mechanical item repair |fithat exceeds $2,000.00 the Seller has the option to repair or the contract will be null and void.”
Melton apparently argues that it is the mere “discovery” of a repair over $2,000 which triggered the operation of the nullity option. Under Melton’s interpretation, it was Campbell’s presentation of over $2000 in repairs which gave him the option to nullify the contract. However, under this reading of the clause, Melton could exit the agreement even when Campbell chose to pay for the repairs. To interpret the provision in that manner not only violates the overall intent of the parties, i.e., the sale of the house for $400,000, but obviously leads to absurd consequences.
Even Campbell urges it was Melton’s refusal to make repairs which activated their option to nullify the contract. Inherent in the nature of the act of refusal is the existence of a demand. Indeed, common sense dictates that it would be illogical to conclude that one ever refuses to do something without first being asked to do it. Therefore, we find implicit in that portion of the clause which gives Melton a choice to pay or refuse repairs over $2000 is the requisite that a demand be first made upon him by Campbell for responsibility of the costs. Accordingly, regardless of who possessed the right to nullify, for either party, the clear and explicit intent of the parties was that the nullity provisions of the contract remained inoperative until some payment of over $2,000 was demanded.
Indeed, it is the issue of whether a demand for payment of costs was made by Campbell which ultimately determines the parties’ rights. The record shows that there were two letters from Campbell to Melton which precipitated Melton to exercise his claimed option to nullify the contract. [7In its findings of fact, the trial *240 court concluded that neither correspondence, dated October 21 and 28, 1997, which informed Melton of the results of the structural reports, qualified as formal demands but were rather “invitation[s] to discuss the matter_” We agree.
Regarding the October 21, 1997 correspondence, Campbell testified that his purpose in writing the letter was to inform Melton of the results of the inspections and of the numerous undisclosed defects or problems which were revealed therein. Indeed, we can discern no language within the body of the communication which could be interpreted as a demand. Moreover, a letter from Roos to Melton, which informs Melton that in his October 27th correspondence Campbell was “just making you aware of the situation” and not asking Melton to “make any repairs,” clearly corroborates Campbell’s aim in writing the letter. Where factual findings are pertinent to the interpretation of a contract, those factual findings will not be disturbed unless manifest error is shown. Hampton v. Hampton, 97-1779 (La.App. 1st Cir.06/29/98), 713 So.2d 1185. Under these circumstances, we find no error in the trial court’s conclusion that this correspondence was inadequate to qualify as a demand.
In the October 28, 1997 letter, Campbell clearly informed Melton of his intent to “accept the house ‘as is’ ” and “to keep [his] word.” He also informed Melton of his desire to “go forward with the closing .... ” The obvious point of difficulty in the language of the letter is Campbell’s discussion of Melton’s responsibility for undisclosed difficulties with three mechanical systems for which he “consider[ed] [Melton] to be responsible” |«and requested Melton “to rebate back to [Campbell] only the cost to fix these items” which totaled approximately $15,000.
Campbell testified that when he wrote the letter, he was still willing to go forward and close on the house and absorb all that liability. Campbell further explained that he was not demanding repair but simply informing Melton of the undisclosed problems which had been discovered and giving him an opportunity to cure them. Obviously, the trial court resolved the discrepancy in the language in favor of Campbell’s explanation that the language was merely informative. With the conflicting language contained therein, it is certainly reasonable to read the correspondence in that manner. Moreover, Campbell’s actions following the correspondence corroborate their intent to buy the home on or before December 8, 1997 for $400,000. An October 30, 1997 correspondence from Campbell’s attorney to Melton plainly advised that “[M]y Clients intend to close on the purchase of the property in accordance with and under the subject Buy/Sell Contract on or before December 8, 1997.... ” Clearly, the settlement statement which was made part of the closing package mailed to Melton by the closing attorney revealed no further deductions other than that which was agreed to by the parties in the original agreement. Under these circumstances, we again cannot find the trial court’s conclusion that this letter was merely an invitation for further discussion, rather than a demand for repairs, to have been clearly wrong. Hampton, supra. Because no demand was made upon Melton, he remained bound by the original terms of the contract until the actual December 2, 1997 closing date. Accordingly, the trial court |flcommitted no error in concluding that Melton’s failure to execute the sale breached the agreement.

Specific Performance

The agreement provides that “in the event of nonperformance by either party, the other party shall have the right to specific performance and/or damages *241 and reasonable attorney fees.” In their petition, Campbell prayed for both remedies against Melton, Millennia and McGa-ha. On appeal, Melton has assigned the issue of specific performance as error but failed to argue it in brief. Accordingly, as to Melton, it is appropriate that we consider this claim abandoned. URCA Rule 2-12.4.
Nevertheless, Millennia has provided argument in brief regarding the propriety of specific performance under the circumstances. This apparently results from the trial court judgment which orders “Specific Performance ... against the Defendants, Harold Keith Melton, Millennia Group L.L.C., Huey Edward McGaha and Melanie Skinner McGaha.” It is apparent that the only parties bound by the specific performance provisions of the agreement are Campbell and Melton. See La. C.C. art. 2623. Therefore, insofar as the judgment orders specific performance of the contract against Millennia and McGaha, it is improper. It will be necessary that we amend the judgment to delete this error.
Nevertheless, we find no error in the trial court award of specific performance of the contract by Melton. Upon the failure to perform an obligation to deliver a thing, the court shall grant specific performance if demanded. However, if specific performance is impracticable, the court may allow damages. La. C.C. art. 1986. Courts are empowered to withhold |1flspecific performance in some exceptional cases even when specific performance is possible, i.e., when the disadvantages of the remedy outweigh its advantages. J. Weingarten, Inc. v. Nor-thgate Mall, Inc., 404 So.2d 896 (La. 1981). Such cases include those where specific relief is impossible, would involve disproportionate costs, would introduce compulsion into close personal relationships, or compel the expression of special forms of artistic or intellectual creativity, or would have a negative effect upon the interest of third parties. Id.
We are mindful of the precarious positions in which Millennia and McGaha find themselves. Their purchase of the home occurred approximately three and one-half years ago and it is apparent the parties have relied upon the validity of the agreement. Hensarling testified that he had expended approximately $111,000 in repairs and improvements, taxes, insurance premiums and interest on the house note. Of course, McGaha did not participate in the proceedings but apparently resides in a house on the property. Even so, it is also equally clear that Campbell filed a Notice of Lis Pendens on December 18, 1997, five days prior to the supposed sale to Millennia and McGaha.
We are called under these facts to balance the disadvantages or costs to Millen-nia and McGaha which would result from specific performance of the contract against the policy considerations underlying enforcement of the public records doctrine.
Generally, a third party dealing with property is charged with knowledge revealed by recorded instruments affecting property. Ridgedell v. Succession of Kuyrkendall, 98-1224 (La.App. 1st Cir.05/19/99), 740 So.2d 173. It is also the law that parties have constructive notice of the existence and contents of a recorded instrument affecting immovable property. Where such an instrument contains language which fairly puts a purchaser on inquiry as to the title, and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts, he is to be considered as having bought at his own risk and peril, Id.
Specifically, a notice of lis pen-dens may be recorded to give notice of the *242 pendency of an action affecting immovable property. La. C.C.P. art. 3751. The purpose of a notice of lis pendens is to give effective notice to third parties of the pen-dency of litigation affecting title to real property. Whitney Nat. Bank v. McCrossen, 93-2160 (La.App. 4th Cir.03/29/94), 635 So.2d 401, writ denied, 94-1108 (La.07/01/94), 639 So.2d 1164. The recor-dation of the notice of lis pendens makes the outcome of the suit of which notice is given binding on third parties. Ducote v. McCrossen, 95-2072 (La.App. 4th Cir.05/29/96), 675 So.2d 817.
It is unquestionable that both Millennia and McGaha will be at the very least inconvenienced by the enforcement of the agreement between Melton and Campbell. It is also apparent that costs have been expended due to Millennia and McGaha’s ostensible purchases of the property over three years ago. However, we are unprepared to determine that under the circumstances of this case, those costs or disadvantages are sufficient to override the entrenched policy considerations attendant to the enforcement of the public records doctrine in this state. Indeed, the comments to La. C.C. art. 1986 note that “the court may allow damages ... instead of specific performance if the latter is impracticable, as when the obligation is l^to deliver a thing and the obli-gor has sold the thing to another person protected by the laws of registry....” (Emphasis added.) The language clearly suggests an exclusion from the definition of impracticable those who are unprotected by the public records doctrine. Therefore, we are constrained to conclude that Millennia and McGaha purchased the subject property at their peril and assumed the risks inherent in the purchase of a home which has a title clouded by a notice of lis pendens. Unfortunately, those risks included the ultimate determination that Melton would be bound by his 1997 agreement to sell the residence to Campbell and the ramifications which might follow. Accordingly, we decline to disturb the trial court’s choice of a remedy.

Answer to Appeal

By way of answer, Campbell has prayed for reasonable attorney fees for defending the appeal. As a general rule, attorney fees may not be awarded to a successful litigant unless specifically provided for by statute or contract. Curtis v. Curtis, 28,698 (La.App.2d Cir.09/25/96), 680 So.2d 1327. Moreover, on appeal, an increase in attorney fees may be awarded where a party who was awarded attorney fees by the trial court is forced to and successfully defends an appeal. Id. In the present case, the provisions of the agreement clearly provide for attorney fees in the event of nonperformance by either party. Because the trial court awarded attorney fees to Campbell and he has successfully defended this appeal, an award of attorney fees on appeal is, therefore, appropriate. We find that a reasonable award for this appeal is $1,000.
1 ^Conclusion
For the foregoing reasons, we amend the trial court judgment to delete only that portion of paragraph 1 which orders specific performance of the contract by Mil-lennia Group, L.L.C. and Huey Edward McGaha and Melanie Skinner McGaha, thereby maintaining specific performance of the contract by Melton. In all other respects the'judgment is affirmed at appellants’ costs including paragraph 2 of said judgment which orders the nullification of the sales of the property from Melton to Millennia and Millennia to McGaha and the expungement of same from the public records. Campbell is awarded an additional $1,000 in attorney fees for defending the appeal.
*243 JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, GASKINS, and KOSTELKA, JJ.
Rehearing denied.

. Deposit Guaranty National Bank, Inc., from which Millennia had secured financing, was also made a defendant by the amendment to the petition.

. Although not yet a party to the lawsuit, Millennia filed an Amicus Curiae memorandum in support of the summary judgment arguing similarly to Melton.

.Millennia also filed an exception of no cause or right of action on June 7, 2000 which the trial court took under advisement and denied in its oral reasons for judgment.