312 So.2d 296 (1975)
Succession of Elizabeth E. TERRAL and J. R. Terral.
No. 55582.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
*297 Bobby L. Culpepper, Holloway, Baker, Culpepper & Brunson, Jonesboro, for applicant.
Hugh E. Brunson, Crowley, for respondent.
SUMMERS, Justice.
Although other issues were presented in the trial and appellate courts, on this review we are solely concerned with an action in declaration of simulation involving one sale by James R. Terral dated December 2, 1943, purporting to convey 83 acres of land in Winn Parish to his son George Terral.
According to the record, a rule was filed in this succession proceeding on February 2, 1972 by four of the eleven forced heirs, children and grandchildren, of decedents James R. Terral and his wife Elizabeth Eldridge. The object of the rule was to compel George Terral, who was then the administrator of the succession, to amend the descriptive list of property composing the succession assets by including the 83 acres purportedly conveyed to him by the deed of December 2, 1943.
The rule is based upon the contention of the petitioning heirs that the sale of 83 acres by James R. Terral to George Terral was a simulation. The simulation took place, it is alleged, because the consideration was never paid. The deed, a cash sale in authentic form, executed before a notary public and two witnesses, is signed by James R. Terral as vendor and George Terral as vendee. It recites that the consideration was $581 "cash in hand paid, the receipt of which is hereby acknowledged."
In addition, the deed contains the following stipulation:
"It is understood and agreed that the said James R. Terral shall have the right to remain on said property as long as he lives and have the management of said lands sold herein and the said George Terral binds himself to (sic) not to sell said land as long as the said James R. Terral lives."
At a hearing on the rule, the depositions of Martha Anderson, a daughter of decedents, and George Terral were introduced into evidence. Only Clifford Malon Moffett, husband of one of the petitioning heirs, and George Terral testified in person at the hearing.
*298 Evidence to support the charge of simulation was entirely inadequate. Only the testimony of Martha Anderson and Moffett was tendered. That testimony consisted principally of vague and uncorroborated statements purportedly made to them many years ago by the deceased James R. Terral to the effect that he had given his property to George. None of the testimony singled out a specific transfer or conveyance; nor did it give the exact or approximate dates on which James R. Terral was supposed to have made such statements. This evidence could not have sustained the charge of simulation if the burden of proof had been imposed upon petitioners.
However, the clause in the deed whereby the vendor James R. Terral reserved the right to manage and remain on the property as long as he lived, and the stipulation binding George Terral not to sell the land as long as James R. Terral lived, constituted a reservation of a usufruct. This reservation vested in James R. Terral, the vendor, the right of enjoying the land, the property of which was by the deed ostensibly in the vendee George, and, to thereby draw from the same all the profit, utility and advantages it may produce. La.Civil Code art. 533.
Where the seller has reserved to himself the usufruct, the case falls within the contemplation of Article 2480 of the Civil Code.[1] And when the seller reserves the usufruct "there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale." There is, moreover, evidence which is essentially undisputed that James R. Terral remained upon the property in the family home until his death in 1957. His widow survived him and continued in residence there until two years prior to her death in 1967. In a sense, therefore, "the thing sold remains in the possession of the seller." La.Civil Code art. 2480.
As is usual in these cases the burden of establishing the reality of a sale many years after the fact is an onerous one. The burden is compounded when the party so charged must overcome a legal presumption that the purported sale is a simulation. Here the notary and witnesses were deceased; and George Terral possessed no checks, receipts, bank accounts or other documentation to support his contention that the price was in fact paid. His only evidence was the deed and his self-serving statements that he paid the price with funds he had saved and which he kept "in his pocket."
He is apparently a man of limited education. At the time of the trial he was 74 years of age. His income from a simple farming operation was meagre. His testimony, given on two occasions is contradictory and at times incoherent.
His father, according to Martha Anderson's testimony, was supposed to have maintained records of his financial affairs. If we are to believe this testimony, since George was the only child of James R. Terral living and working on the home place, only he had access to these records. Although at the time his deposition was taken he was supposed to bring all records and documents dealing with the succession and the sale, he appeared empty handed, claiming that the only records were those "in his head". He depends upon his testimony and his assertion that there were no written records to rebut the presumption established by Article 2480.
Based upon this testimony and the deed, which was introduced into evidence, the trial judge found that George Terral had *299 failed to carry the burden of proof imposed upon him by law, and that "the evidence clearly preponderates in support of the conclusion that this conveyance was in fact a simulation." Accordingly, the judge declared the act of sale to be a simulation, and, as such, the same was annulled and set aside; and the 83 acres purportedly conveyed thereby was ordered and returned to the succession.
The administrator, George Terral, was directed to amend the succession inventory or descriptive list to include the property which was the subject of the simulated sale and to account for the revenue therefrom. On appeal to the Second Circuit, the judgment was affirmed. 301 So.2d 754. Certiorari was granted on the application of George Terral, complaining that the trial and appellate courts erred in finding that he failed to rebut the presumption of simulation.
Forced heirs have the right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitime. La.Civil Code art. 2239.
Charges of simulated contracts are principally governed by Article 2480 of the Civil Code. See footnote 1, supra.
Although these articles are somewhat explicit, there is no effort in the code to define the doctrine of simulation. And there are no articles in the French Civil Code on this subject save Article 1321,[2] which is not one upon which we can rely for a definition. There is, however, an elaborate doctrinal edifice of simulation long recognized by the French Courts and text writers. See Aubry et Rau, Cours de droit civil francais XII (5e éd. 1922), n° 756 bis., p. 184: "I1 n'y a pas de contrelettre là òu il n'y pas simulation." Cf. also Baudry-Lacantinerie, Precis de droit civil II (12e éd 1921), nos 295-96, p. 299; Baudry-Lacantinerie et Barde, Traité de droit civil XV, Des Obligations III (3e éd 1908), nos 2385-2418, pp. 111-138; Demolombe, Traité des contracts IV (1878) nos 303-49, pp. 270-298.
Simulation, according to Planiol, is an understanding between the parties against third persons. Ordinarily one of the parties, by means of the simulated act, proposes to deceive someone, and the simulation is thus a means of fraud. Planiol, Traité Eléméntaire de Droit Civil, Vol. 2part 1, nos 1185-1208.
To some extent our decisions have discussed simulation and a definition of sorts may be derived from these expressions. For instance, in Viguerie v. Hall, 107 La. 767, 31 So. 1019 (1902) the Court said:
"It is no unusual occurrence for parties to place their property and rights in the name and under the control of others, without any consideration whatever, and without the intention of ownership being actually transferred. Such acts are permissible, and cannot be gainsaid, unless they carry injury to some one. A simulation is not necessarily a fraud. It is only so when injury to third persons is intended. Gravier's Curator v. Carraby's Ex'r, 17 La. 118, 36 Am.Dec. 608."
Where the alleged sale is a mere simulation, it may be set aside as a nullity by the heirs of the seller, for a simulated sale does not transfer the property. The fraudulent simulation, a mere pretense, without reality, conveys no title. Olivier, Voorhies & Lowrey v. Majors, 133 La. 764, 63 So. 323 (1913).
A simulated contract is one which, though clothed in concrete form, has no existence in fact, and it may at any time, and at the demand of any person in interest, be declared a sham and may be annulled by the heirs of the apparent vendor. *300 Maddox v. Butchee, 203 La. 299, 14 So.2d 4 (1943); Hibernia Bank and Trust Co. v. Louisiana Ave. Realty Co., 143 La. 962, 79 So. 554 (1918); Interstate Trust and Banking Co. v. Louisiana Ave. Realty Co., 143 La. 971,79 So. 557 (1918).
Each case involving simulation must be decided on its peculiar facts. And where the issue is primarily dependent upon the credibility of a single witness, as here, the decision of the trial judge is entitled to considerable weight. In this case the trial judge was unimpressed by George Terral's testimony, and properly so. A legal presumption established in law to shield the legitime of forced heirs from fraudulent transactions must be rebutted by convincing evidence which preponderates in favor of the reality of the sale. This has not been accomplished by George Terral's testimony; and the judgment of the trial court nullifying the sale of December 2, 1943 as a simulation is affirmed. The following described property is therefore ordered returned to the succession:
"S½ of SW¼, Section 14, and beginning at the Northwest corner of Section 23, and run South 70 yards, thence East 210 yards, thence North 70 yards and thence West 210 yards to place of beginning. All in Township 13, North of Range 3 West, La.Mer., together with all improvements and appurtenances thereto belonging, containing 83 acres more or less."
We do not agree, however, that George Terral should be compelled, as ordered by the trial court, to account for the revenue derived from the above property prior to the death of his mother on March 20, 1967. After the execution of the sale of December 2, 1943, the record reflects that George undertook to conduct the farming operations, and that his father, during his lifetime, and his mother, thereafter, until her death, approved and condoned his every action. None of the other children were present to aid and assist their aged parents; but George undertook this responsibility and discharged it faithfully over the years. Any revenue derived from the property, we are convinced, was utilized for the common benefit of George, whose labors produced the income, and for his parents, who retained a semblance of control and management over the land. All revenue distributed, therefore, and all debts and obligations incurred in the farming operations, were authorized by the father who had retained the usufruct. After his death, the mother continued the arrangement with George, and his actions were approved by her as the usufructuary. No accounting by George is therefore required until after her death.
For the reasons assigned, the judgments of the trial court and Court of Appeal are affirmed in part and reversed in part.
NOTES
[1] La.Civil Code art. 2480 provides:

"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."
[2] French Civil Code art. 1321 provides:

"Counter letters can only have effect between the contracting parties; they have no effect against others."