| .CHEHARDY, Judge.
This is an appeal from a judgment granting a motion to traverse the sworn descriptive list in a succession proceeding. We affirm in part, reverse in part and remand.
On October 1, 1998 a petition was filed to probate the olographic testament of *706 Lionel August Bernardi, Sr., alleging in pertinent part that the decedent died on July 6, 1962, that he left a last will and testament in olographic form, dated January 25, 1959, and that he was survived by his widow, Barbara McCabe, and his three children, Lionel A. Bernardi, Jr., Janice Bernardi Meyer, and Barbara J. Bernardi Blanchard. The petitioners were Janice Meyer and Barbara Blanchard. They alleged that in his will the decedent named his wife as executrix, but that she died on October 26, 1996. The petition requested that Janice Bernardi Meyer be appointed dative testamentary executrix in lieu of the deceased Barbara McCabe Bernardi.
Attached to the petition was a sworn descriptive list showing that the only property in the succession was two tracts of land located in the City of Gretna. The first consisted of Lots No. 1, 2, 3, and 13 through 24 of Square No. 27, the square bounded by Huey P. Long Avenue, Weyer Street, Seventh Street and Eighth Street. The second consisted of |3Lots No. 4 through 8 of the same square. We refer to the first tract henceforth as “the disputed tract.”
Lionel A. Bernardi, Jr. filed a motion to traverse the sworn descriptive list. He alleged that the disputed tract had been donated to him by his father, the decedent, on December 1, 1959 and that title to the property had been definitively adjudicated in prior proceedings. Bernardi, Jr. asserted that title to the property had transferred to him prior to the decedent’s death and, therefore, the property could not be part of the decedent’s estate.[1]
Bernardi, Jr. also sought sanctions against and attorney fees from his sisters and their counsel, on the ground that inclusion in and/or omission from the sworn descriptive list of the various items raised by the motion was not well-grounded in fact, was not made after reasonable inquiry, was not warranted by law or good faith argument, and was violative of La. C.C.P. arts. 863, 3158, and 3182.
Meyer and Blanchard opposed the motion to traverse, asserting that the transfer of the disputed tract had been made subject to a counter letter, which had been recorded in the conveyance office on August 28, 1998 and which established title in the name of Lionel August Bernardi, Sr., thereby making the lots assets of the estate. Meyer and Blanchard asserted that the litigation cited by the mover as disposi-tive of title to the property is inapposite because neither sister was a party to that litigation and their rights had never been adjudicated. The opponents also asserted their mother had collected all rents on this property until her death on October 26, 1996.
The counter letter to which they refer reads as follows:
| ¿December 1,1959
This is to certify that although I, Lionel A. Bernardi, Jr., have this date purchased from Lionel A. Bernardi, Sr., Lots 1, 2, 3, and 13 through 24, both inclusive, of Square 27, Village of Me-chanickham, City of Gretna, Jefferson Parish, Louisiana,, this property has been placed in my name for convenience only, and in truth and in fact the price recited in the act of sale has never been paid, nor is there any intention to convey title to the said property; and on request of Lionel A. Bernardi, Sr., I, Lionel A. Bernardi, Jr., will reconvey the property to the said Lionel A. Ber-nardi, Sr., his heirs or assigns, or the said Lionel A. Bernardi, Sr. his heirs or assigns may record this counter letter to effect the retransfer of this property on the records.
After a hearing the district court rendered judgment finding the disputed tract excluded from the succession. The court *707 gave the following oral reasons for judgment:
It’s the decision of the Court that this property does not form a part of the estate of the late Mr. Bernardi, Sr.; that in fact, it is property of Mr. Bernardi, Jr. The Court would base its ruling on not the least of which, even the language of the counter letter, assuming it to be correct. And the one that was executed indicates that it would be returned at the request of Mr. Bernardi, Sr. And as I understand it, there’s been testimony at no time was this property requested to be returned to Mr. Bernardi, Sr. by Mr. Bernardi, Jr. or by Mr. Bernardi, Sr. to any of his heirs. I think that’s the clear language in the counter letter, itself. But I nevertheless find that the property is in fact that of Mr. Bernardi, Jr.
The court denied the motion for sanctions, however.
Meyer and Blanchard appeal. Bernardi, Jr. has answered the appeal, challenging the trial court’s denial of his request for sanctions.
The appellants assert the trial court erred as follows: (1) in excluding from evidence certain pages from the transcript of Mr. Bernardi, Jr.’s testimony given at the trial of his Terrebonne Parish community property dispute with his first wife; (2) in interpreting the counter letter as requiring the decedent to personally request that his son reconvey the disputed property; and (3) in failing to determine that the estate of the decedent owned the Gretna property based on the uncontro-verted evidence that the act of sale was never intended to convey true title to Mr. Bernardi, Jr., that Mr. Bernardi, Jr. |Rnever paid his father the consideration stated in the act of sale, and that Lionel A. Bernardi, Sr. and later his widow maintained full control and dominion over the disputed property until the widow’s death in 1996.
Further, appellants assert that the decision rendered in Bernardi v. Chesson, 551 So.2d 678 (La.App. 1 Cir.1989), is not dis-positive of the conflicting claims of the coheirs to the disputed Gretna property.
“The thing, the price, and the consent of the parties are requirements for the perfection of a sale.” La. C.C. Art. 2439. “The sale of immovable property by parents to their children may be attacked by the forced heirs as a donation in disguise if those heirs can prove that no price was paid or that the price paid was less than one fourth of the value of the immovable at the time of the sale.” La. C.C. Art. 2444.[2]
“The price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. There is no sale unless the parties intended that a price be paid. The price must not be out of all proportion with the value of the thing sold.” La. C.C. Art. 2464. “When the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation, and, where the interest of heirs and creditors of the seller is concerned, the parties must show that their contract is not a simulation.” La. C.C. Art. 2480.
“A contract is a simulation when, by mutual agreement, it does not express the true intent of the parties. If the true intent of the parties is expressed in a separate writing, that writing is a counter-letter.” LA. C.C. Art.2025.[3]
*708 |fi‘Where the alleged sale is a mere simulation, it may be set aside as a nullity by the heirs of the seller, for a simulated sale does not transfer the property. The fraudulent simulation, a mere pretense, without reality, conveys no title.” Succession of Terral, 312 So.2d 296, 299 (La.1975).
“A simulated sale does not transfer property, and it occurs where the parties have no good faith intent to transfer ownership. It is a sham, and as a result, an absolute nullity.” Wilson v. Progressive State Bank & Trust Co., 446 So.2d 867, 869 (La.App. 2 Cir.1984).
Not only does the counter letter in this case explicitly state that the price recited in the act of sale was never paid, but also that the property was placed in Bernardi, Jr.’s name “for convenience only” and there was no intention to convey title. Further, Bernardi, Jr. himself testified that no money changed hands and that he signed a counter letter.
The testimony made clear that after the sale Bernardi, Jr.’s father and mother continued to treat the property as their own, living on it, retaining the rents earned by the property, paying the bills, and maintaining the place. Although Bernardi, Jr. testified he maintained insurance on the property and had paid notes on a mortgage, his sister’s testimony made clear that she too had made payments on the mortgage, as had their mother. In addition, their mother had maintained insurance on the property.
Neither side produced documentary evidence (e.g., canceled checks) to support their claims of having made various payments on the property and its maintenance.
|7The prior cases cited by Bernardi, Jr. are not applicable nor are they res judicata here. Those cases dealt only with whether the property was part of the marital community between Bernardi, Jr. and his first wife.
In Bernardi v. Chesson, 551 So.2d 678 (La.App. 1 Cir.1989), the court concluded that Bernardi, Jr. had shown by his actions that he believed the property was community when he used it as a community asset, entered into a settlement where the property was valued as a community asset, and later executed a note and mortgage secured by the property. The court specifically noted that “the issue of non-ownership” was not before it and noted that at trial Bernardi, Jr. submitted a counter letter and asserted that the conveyance of the property was a simulated sale. 551 So.2d at 680.
Similarly, in Bernardi v. Bernardi, 417 So.2d 382 (La.App.1982), a suit by Bernardi, Jr.’s ex-wife to enforce a promissory note he gave her, the court decided that as far as the community dispute was concerned, Bernardi, Jr.’s ownership of the disputed property had to be governed by the public records, which had shown since 1959 that Bernardi, Jr. was owner of the property.
We find the trial court erred in interpreting the counter letter to mean that only the decedent had the power to record the counter letter. The letter states, “[T]he said Lionel A. Bernardi, Sr. his heirs or assigns may record this counter letter to effect the retransfer of this property on the records.” In fact, the letter was recorded, nearly 40 years after the original transaction, by heirs of Bernardi, Sr.
We conclude that, for purposes of the succession, the purported sale of the property to Bernardi, Jr. was a simulation. As such, it is null. Accordingly, the trial court erred in excluding the property from the succession.
*709 For the foregoing reasons, the judgment of the district court is reversed insofar as it granted the motion to traverse. The motion to traverse is denied and the disputed property is included in the estate of the decedent. The judgment is affirmed, however, | Rinsofar as it denied the motion for sanctions. The case is remanded for further proceedings to conclude the succession.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. The motion to traverse also listed other property the mover alleged should be included in the estate, both immovable and movable, but those items are not at issue on this appeal.

. The rules of forced heirship in effect at the time of the decedent's death in 1962 apply in this case.

. La. R.S. 9:2721(A) provides,
No sale, contract, counter letter, lien, mortgage, judgment, ... or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated. Neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties. [Emphasis added.]
*708 Similarly, La. R.S. 9:2756 states, “All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.”