744 So.2d 676 (1999)
Harold Glen SCOGGINS and Marie B. Scoggins
v.
John Lloyd FREDERICK[1] and Aswell J. Robertson.
Harold Glen Scoggins and Marie B. Scoggins
v.
Aswell J. Robertson.
Joseph A. Gladney, Individually, and Joseph A. Gladney and Associates, et al.
v.
John Lloyd Frederick and Mildred Blount Robertson and Marie B. Scoggins, and Heirs of Harold G. Scoggins, et al.
Nos. 98 CA 1814 to 98 CA 1816.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Order Granting Rehearing for Limited Purpose November 18, 1999.
*679 Richard C. Macaluso, Hammond, Counsel for Appellant John Lloyd Fredrick.
John O. Charrier, Jr., Baton Rouge, Counsel for Appellee Billie B. Albritton.
Before: GONZALES, FITZSIMMONS, and WEIMER, JJ.
WEIMER, J.
John Lloyd Fredrick appeals a judgment that ordered a certain plot of immovable property located in Tangipahoa Parish be re-conveyed and re-titled in the names of Mildred Blount Robertson and her husband, Aswell J. Robertson, as a result of a finding of a simulated sale. Finding no error by the trial court, we affirm.

FACTS
Three suits were filed and subsequently consolidated in the district court and have been consolidated on appeal. All three law suits involve an act of cash sale dated February 1, 1975, purporting to convey to Mr. Fredrick 82½ acres of land then owned by Aswell J. and Mildred B. Robertson (the "Robertsons"), who are now deceased.[2] The late Mrs. Robertson was the half sister of Mr. Fredrick.
Suit number 57,436 (98CA1814) was filed on September 26, 1979, by Harold G. and Marie B. Scoggins, (the "Scogginses"), through their attorney, Joseph A. Gladney, against Mr. Fredrick. The Scogginses urged they were the judgment creditors of Mr. Robertson and that the 1975 sale was a simulation designed to put the Robertsons' property beyond their reach as judgment creditors. They ask that the sale be set aside, thus clearing the way for execution of their judgments.[3]
Suit number 60,259 (98CA1815) was filed on September 9, 1980, by the Scogginses, through their attorney, Joseph A. Gladney, against Mr. Robertson and was a petition to make two 1979 judgments in the personal injury suit executory in the Twenty-First Judicial District Court, for the purpose of executing on the Robertsons' property. On August 27, 1981, the Scogginses discharged Mr. Gladney and hired Larry *680 S. Bankston, Mrs. Scoggins' nephew, as their attorney. The Gladney law firm intervened in the suit to assert an attorney's lien and privilege on the proceeds of the sale of the property. Mrs. Robertson, as administratrix of her then-deceased husband's estate, procured a preliminary injunction, which was reduced to judgment filed on May 31, 1983, preventing a sheriff's sale, and which was still pending at the time of the trial.
Suit number 73,319 (98CA1816) was a separate suit filed on October 31, 1984, by the Gladney law firm against multiple defendants, re-urging that the sale was a simulation and opposing an alleged settlement between the Scogginses and Mr. Fredrick to divide the property in kind.
On November 7, 1984, an order consolidating the three suits was signed. On May 10, 1994, Mrs. Robertson filed a cross claim against Mr. Fredrick, seeking to have the cash sale declared a simulation. After Mrs. Robertson's death, her niece, Billie B. Albritton, as administratrix of the estate of her aunt, filed a petition to be substituted as a party in the proceedings.
The matters were not brought to trial until August 28, 1997. By that time, the Scogginses and the Robertsons were all deceased, and a settlement had been reached between the Scoggins interests and the Robertson interests. Thus, the trial court was informed that the only issue presented for trial was whether the 1975 sale was a simulation; all other issues were moot. The trial court took the matter under advisement and rendered judgment on February 3, 1998, ordering reconveyance and re-titling of the property.
Without explanation, on two dates, October 29, 1997, and November 26, 1997, the trial court provided written reasons for judgment. With one minor exception,[4] the reasons were substantively consistent with each other and with the judgment. The trial court's findings were: 1) the 1975 sale was a simulation; 2) because the Robertsons retained a life usufruct in the act of sale and continued to reside on the property, Mr. Fredrick had the burden of proving the sale was not a simulation; 3) Mr. Fredrick did not carry his burden of proof; 4) the court credited the opinion of the plaintiffs' handwriting expert that the signatures on a counterletter were authentic; 5) the court credited documents produced by two bank officers as proof that the cash withdrawn by the Robertsons prior to the 1975 sale was used by Mr. Fredrick as a simulated "payment" for the property; and 6) the court noted the testimony about the money was unrefuted, as Mr. Fredrick refused to testify how he procured the cash.

THRESHOLD ISSUES
On appeal, Mr. Fredrick raises several threshold issues[5] which we will address prior to discussion of the simulated sale, the sole issue on the merits decided by the trial court. The first issue is abandonment, and the second is prescription, including the failure of the Scogginses to *681 have the judgment against the Robertsons reinscribed.[6]
Mr. Fredrick maintains the three suits should have been declared abandoned for inactivity for five years prior to trial. This argument is without merit because, regardless of whether the three suits in which Mrs. Robertson was a defendant were abandoned or whether the original plaintiffs' causes of action were prescribed, Mrs. Robertson had a separate, independent cause of action sufficient to have the sale declared a simulation. Mrs. Robertson filed the cross claim against Mr. Fredrick to have the sale declared a simulation on May 19, 1994, a little over three years prior to the trial. Mrs. Robertson's action was timely, as the action to have a simulated sale declared a nullity never prescribes.[7] LSA-C.C. arts. 2030 and 2032. Thus, the cause of action for simulation was not prescribed.[8]
Because of the unique characteristic of an action for simulation never prescribing, we hold the cross claim acted as a separate action. Because Mrs. Robertson's cross claim was filed within five years prior to trial, there was no abandonment.[9] We limit our holding regarding the cross claim acting as a separate action to the particular facts of this case.[10]
A related issue is expressed in Mr. Fredrick's specification of error number 8, which states: "As a matter of law the Court could not ignore and disregard the prior pleadings, admissions and statements made by Mildred B. Robertson personally and as representative of her deceased husband's estate in support of the validity of the sale from Aswell J. Robertson to John Lloyd Fredrick." Apparently, Mr. Fredrick refers to the pleadings filed on Mrs. Robertson's behalf in the consolidated suits and to the deposition she gave on September 24, 1980, in suit number 57,436 (98CA1814).
Initially, we note that a party is not inexorably bound by testimony given on the witness stand or by factual allegations contained in pleadings from a prior suit. Jackson v. Gulf Insurance Company, 250 La. 819, 832, 199 So.2d 886, 891 (1967). See also, Sanderson v. Frost, 198 La. 295, 309-310, 3 So.2d 626, 631 (1941), a contest over title to immovable property wherein the court held that allegations contained in tutorship proceedings, which were relied upon by the plaintiffs as constituting judicial confessions, were made in another proceeding and not in the case at bar, making LSA-C.C. art. 2291 (now LSA-C.C. *682 art. 1853)[11] inapplicable. Such allegations constituted evidence, but not conclusive presumptions or estoppels. Other cases have further indicated that a party litigant is not even bound by factual allegations made in the same suit unless his adversary was mislead or deceived by those allegations to his detriment. J.H. Jenkins Contractors, Inc. v. Farriel, 261 La. 374, 395, 259 So.2d 882, 890 (1972); DeMaupassant v. Clayton, 214 La. 812, 820, 38 So.2d 791, 793 (1949); Mouledous v. Poirier, 221 So.2d 291, 295 (La.App. 4 Cir.1969). Further, judicial admissions in the same suit have been held not to bar curative amendments. Guidry v. Barras, 368 So.2d 1129, 1132 (La.App. 3 Cir.1979). In the instant case, the cross claim of Mrs. Robertson is tantamount to a separate suit and has an effect similar to a curative amendment.
Regardless, our review of the pleadings reveals Mrs. Robertson made no judicial confession, as defined in LSA-C.C. art. 1853 and interpreted in the jurisprudence.[12] The only pleading filed by Mrs. Robertson in suit number 73,319 contained exceptions of no right and no cause of action; the pleading contains no admissions. The only pleading filed by Mrs. Robertson in suit number 60,259 was a petition for injunction; the pleading contains no admissions. In suit number 57,436, an answer was filed on behalf of Mr. Robertson, prior to his death; it is in the form of a general denial and contains no admissions of fact. After Mr. Robertson's death, Mrs. Robertson filed a motion to have herself substituted as party defendant; this pleading contains no admissions. The next pleading filed by Mrs. Robertson was the cross claim against Mr. Frederick in suit number 57,436, in which she claims the cash sale in which she participated was a simulation. Thus, there is no pleading in the records of the three suits that could be interpreted as a judicial admission which is contrary to the position assumed in her cross claim. Cf. Hyde v. Hibernia National Bank in Jefferson Parish, 584 So.2d 1181, 1183-1184 (La.App. 5 Cir. 1991), wherein the court held that an admission of fact in a party's answer, as contrasted with a denial of fact, constituted a judicial confession.[13]
*683 Further, under the jurisprudence, Mrs. Robertson's deposition testimony that the sale was not a simulation cannot be considered a judicial confession sufficient to estop her subsequent cross claim alleging that the sale was a simulation. Hyde, 584 So.2d at 1183-1184. In Jackson, 250 La. at 832, 199 So.2d at 891, the court held that the disserving or contradictory factual testimony of a party-witness was not a judicial confession under LSA-C.C. art. 2291 (now LSA-C.C. art. 1853). The Louisiana Supreme Court pointed out that the judicial confession is distinct from a party's factual testimony, as the Louisiana codes have distinguished the judicial confession of a party from testimonial proof. Jackson, 250 La. at 831, 199 So.2d at 891. The court stated an admission must be an intentional waiver relating to the opponent's proof and not merely an assertion made for some independent purpose, such as a statement made for the purpose of giving testimony. Id. To be an effective agency of truth, the trier of fact must be allowed to weigh the disserving testimony of a party, as well as other evidence. When the truth is found elsewhere, the party's disserving testimony must yield in order to achieve the ends of justice. The supreme court specifically rejected as unsound the concept that equates a party's disserving factual testimony with a judicial confession and held that a party's disserving testimony is not a judicial confession or a conclusive admission. Id. Thus, a trial court is not precluded from disbelieving a party litigant's disserving testimony and may decide the case on the entire record. We note the Jackson decision was heralded as "most fellcitous" by the preeminent authority on evidence, Professor George W. Pugh. See G.W. Pugh, The Work of the Louisiana Appellate Courts for the 1966-1967 TermEvidence, 28 La.L.Rev. 312, 439. We note diametrically opposed testimony under oath may give rise to a charge of perjury, but, based on the decision of the supreme court, such testimony does not necessarily serve as a judicial confession or conclusive admission.
Nevertheless, Mr. Fredrick's arguments concerning these matters are irrelevant, including his motion in this court to strike the second deposition from the record, because the trial court apparently did not rely on either of Mrs. Robertson's depositions or on the testimony of her niece who was present at the second deposition.
Next, Mr. Fredrick raises the issue of failure to name an indispensable party, specifically, his wife, Mardell Davis Fredrick, who was not made a party to this litigation. Mr. Fredrick's argument that his wife should have been made a party to any adjudication of community property is based on the premise that the 1975 act of sale vested title in him as head and master of the community. The issue of community versus separate property is immaterial. Mr. Fredrick's assertion of lack of an indispensable party is without merit because title to property involved in an absolute simulation is not transferred from the purported vendor to the purported vendee, although the purported vendee becomes the record title holder. See LSA-C.C. art. 2026;[14]Ridgedell v. Kuyrkendall, 98-1224 (La.App. 1 Cir. 5/18/99), 740 So.2d 173, 176-177. Thus, Mrs. Fredrick, who was neither a record title holder nor a purported vendee, was not an indispensable party to these suits.[15]
Mr. Fredrick also urges the Scoggins plaintiffs and the Gladney plaintiffs-intervenors *684 had no cause or right of action.[16] Discussion of this issue is unnecessary because trial on the merits was limited to the cross claim of Mrs. Robertson. The right of any party other than Mr. Fredrick and the original owners, Mr. and Mrs. Robertson, and their derivatives is not before us on appeal. (See discussion of derivatives, Note 21, infra.) Nevertheless, we note the well established jurisprudence is to the effect that a transfer may be declared an absolute simulation at the demand of any person in interest. Adams v. Trichel, 304 So.2d 740, 742 (La.App. 2 Cir.1974), quoting Spiers v. Davidson, 233 La. 239, 246, 96 So.2d 502, 504 (1957).
Finally, Mr. Fredrick complains about the settlement between the Scoggins interests and the Robertson interests, which he labels a "Mary Carter" agreement. He claims he was prejudiced by the settlement and should have been granted a continuance to investigate the settlement. The term "Mary Carter" agreement refers to a contract between a plaintiff and one co-defendant, typically with the following features: (1) secrecy; (2) the contracting defendant remains a party to the suit; (3) the contracting defendant's liability will be reduced proportionately by increasing the liability of its co-defendants; and (4) the contracting defendant guarantees the minimum recovery to the plaintiff. See Thibodeaux v. Ferrellgas, Inc., 97-1267 (La.App. 3 Cir. 9/9/98), 717 So.2d 668, 670. There is no evidence in the record to suggest the settlement in the instant case was a Mary Carter agreement. Furthermore, the settlement reached between the parties who were the original plaintiffs and defendants in the tort suit, along with their former attorneys, did not have any effect whatsoever on the determination by the court of the issue of a simulated sale. Mr. Fredrick's argument concerning the settlement is without merit.[17]

SIMULATED SALE
Our review of the record convinces us the trial court committed neither an error of law, nor manifest error, in its factual findings.
In an action en declaration de simulation, the initial evidence to be considered is the act of sale which is being attacked. In the instant case, that document is a "Cash Sale" dated February 1, 1975, and signed by Aswell J. Robertson and John Lloyd Fredrick. The cash sale recites a price of $40,000.00 and contains a description of the property purportedly conveyed. The document also contains the following: "The usufruct of the above described property is hereby retained by Aswell J. Robertson and Mary Blount Robertson until their deaths." The reservation of usufruct was accompanied by corporeal possession when the Robertsons maintained their residence on the property until Mr. Robertson's death and Mrs. Robertson's stroke. After her stroke, she moved to a nursing home, and the house was occupied by family members other than Mr. Fredrick. These facts were established at trial by testimony of the Robertsons' nieces and nephew. There was no evidence that Mr. Fredrick ever occupied the premises, as he maintained his residence in another state.
The effect of the reservation of usufruct and corporeal possession of the property by the purported vendors was to shift the burden of proof at the trial of the action for declaration of simulation. Instead of the parties who urged simulation having to come forth with evidence to support the charge of simulation, the purported vendee had the burden of proof that the sale was not a simulation. Where the seller has reserved the usufruct and has continued to reside on the property, the case falls within the contemplation of *685 LSA-C.C. art. 2480, which provides: "When the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation, and, where the interest of heirs and creditors of the seller is concerned, the parties must show that their contract is not a simulation." See Succession of Terral, 312 So.2d 296, 298 (La.1975). The burden of establishing the reality of a sale many years after the fact is an onerous one, and the burden is compounded when the party so charged must overcome a legal presumption that the purported sale is a simulation. Id. On appeal, Mr. Fredrick has pointed to no evidence presented by him which satisfies this burden.
The second item of evidence to be considered by the trial court was a counterletter signed by Mr. Robertson and Mr. Fredrick. The importance of a counterletter in an action en declaration de simulation is well established. A simulation is defined in LSA-C.C. art. 2025 as a contract which "by mutual agreement... does not express the true intent of the parties." The same article defines a counterletter as follows: "If the true intent of the parties is expressed in a separate writing, that writing is a counterletter." An absolute simulation exists "when the parties intend that their contract shall produce no effects between them. That simulation, therefore, can have no effects between the parties." LSA-C.C. art. 2026. The true intent of the parties to an absolute simulation is given effect when, for example, an apparent transferee confirms by counterletter that the subject property still belongs to the transferor. LSA-C.C. art. 2026, Comments (b). The apparent transferor may not succeed in attacking an absolute simulation in the absence of a counterletter. Id.
The Louisiana jurisprudence distinguishes "sham transactions," which have no effect at all, from "disguised donations," which are intended by the parties to be valid, but are not represented as donations on their face. LSA-C.C. art. 2026, Comments (a) and cases cited therein. In an absolute simulation, the parties pretend to transfer property from one to the other, but they intend that the transferor retain ownership. In a relative simulation, a sale appears to be valid on its face, but is intended by the parties to be a gift rather than a sale.[18]See Owen v. Owen, 336 So.2d 782, 786 (La.1976); Bonnett v. Mize, 556 So.2d 228, 231 (La.App. 2 Cir.), writ denied, 559 So.2d 1360 (1990).
The treatment of simulations in the Louisiana statutes and jurisprudence is the subject of Thomas B. Lemann's detailed analysis, Some Aspects of Simulation in France and Louisiana, 29 Tul.L.Rev. 22 (1954).[19] The author discusses, among other cases, contests between the supposed transferor of immovable property and the supposed transferee.[20] Persons who trace their titles to either are called "derivatives."[21] 29 Tul.L.Rev. at 33-34.
*686 The law imposes a strict rule of evidence in contests between the parties to a simulationonly written proof will suffice to establish the true agreement where one party disputes it. In a non-transfer simulation the world sees the apparent contract, but does not see the verbal or written secret contract that expresses the true will of the parties. The law requires written proof of the true will of the parties because the courts have been unwilling to allow themselves to be open to a potential contest of veracities every time property is sold. 29 Tul.L.Rev. at 29; Ridgedell v. Kuyrkendall, 740 So.2d at 177.
It can be said unequivocally that a supposed transferor cannot establish an absolute simulation unless he produces a written counterletter. 29 Tul. L.Rev. at 31. See Sherman v. Nehlig, 154 La. 25, 30, 97 So. 270, 272 (1923). The issue of whether a sale was simulated is an issue of fact, but normally it cannot reach the court because all non-written evidence bearing on the issue is excluded by operation of law, and the written evidence is so unequivocal as to be conclusive of the facts. Thus, in contests between the purported vendor and the purported vendee, no questions of fact are presented, but only questions of law. Ridgedell v. Kuyrkendall, 740 So.2d at 177. Also in contests between the purported vendor and the purported vendee of immovable property, counterletters are admissible evidence; the testimony of witnesses is not. LSA-C.C. art. 2026, Comments (b); 5 SAUL LITVINOFF, LOUISIANA CIVIL LAW TREATISE, THE LAW OF OBLIGATIONS, § 12.97, at 399 (1992) ("If the simulation is absolute, that is, if the parties intended that their act should produce no effects between them, testimonial proof that the written act is actually a simulation may not be admitted when the apparent or simulated act contained in a writing purports to effect a transfer of immovable property.")[22] In the instant case, the trial court was presented with an issue of law, interpretation of the cash sale and the counterletter, and an issue of fact, whether the counterletter was authentic.
The counterletter in the instant case consists of the following:
Feb[.] 1975
We know this is not a real sale[.] Me and Loyd do this to protect my property[.] I give him [$]40,000 [of] my money in [Hobart] Pardue's [office.] He give it back[.] When trouble is over Loyd will give me back my property in my name[.] Mil[dred] trust[s] [Lloyd's] word [but] this is business[.]
The counterletter is signed by Aswell J. Robertson and John L. Fredrick. In addition to having the counterletter in evidence, the trial court heard the testimony of witnesses on behalf of the Robertson interests' witnesses concerning the counterletter.
Shirley Faye Blount Robertson testified that she was the blood niece of both Mildred B. and Aswell J. Robertson. Together with her ten siblings, she lived just down the road from her aunt and uncle when she was growing up. During 1994, she searched the old Robertson home and found the counterletter. She testified she *687 recognized the counterletter as containing the handwriting of her uncle. Mr. Fredrick presented no evidence at trial to refute Ms. Robertson's testimony. On appeal, he merely argues his personal opinion that her finding of the counterletter was implausible.
J. Robert Murray, Jr. was qualified as an expert on forensic handwriting examination. He testified that he examined "standards" to determine if the signatures on the counterletter were authentic. The standards provided to him were the two men's signatures on other documents. The witness went into detail about the methods he used to compare the admitted signatures with the questioned signatures.[23] In conclusion, he stated, unequivocally, "It is my unqualified opinion that John L. Fredrick did sign the counter letter based on examination of the standards." Concerning the signature of Mr. Robertson, the testimony was:
Q. Do you have an opinion on the question of whether the signature on the counter letter is the actual signature of Aswell Robertson?
A. It is the actual signature. He did sign that.
On appeal, Mr. Fredrick attacks the testimony of the Robertsons' handwriting expert on several grounds, in the following assignments of error:
9. The trial Court erred in failing to exclude the testimony of the Robertson's [sic] questioned document examiner.
10. The trial Court erred in ... not allow[ing] Mr. Fredrick's counsel a fair opportunity to examine the questioned documents examiner both as to his expertise and with regards to bias, interest, corruption or credibility.
11. The trial Court erred by failing to allow Mr. Fredrick's questioned documents examiner to render testimony or an opinion with regards to the document in question.[24]
12. The trial Court erred in not ordering the pre-trial production of the report of the Robertson's [sic] questioned document examiner.
13. The trial Court erred by failing to appoint its own experts.
14. The trial Court erred in failing to allow Mr. Fredrick an opportunity to examine the questioned document prior to trial and in denying appellant's motions both pre-trial and during trial with regards to this issue and in denying a continuance.
Assignments of error numbers 9 through 14, which Mr. Fredrick addresses in brief in globo, are clearly without merit for the following reasons. First, Mr. Fredrick's attack on the witness's testimony goes to the weight of the evidence, not the admissibility of the testimony. As the trier of fact, the court was free to accept or reject, in whole or in part, the testimony of any witness. Morrison v. Morrison, 97-0295, p. 5 (La.App. 1 Cir. 9/19/97), 699 So.2d 1124, 1127. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, reasonable inferences of fact should not be disturbed on appeal. See Miley v. Louisiana Farm Bureau Casualty Insurance Company, 599 So.2d 791, 809 (La.App. 1 Cir.), (Lanier, J., concurring in *688 part and dissenting in part), writ denied, 604 So.2d 1313 (1992). The trial court in the instant case accepted Mr. Murray's testimony as credible when it reached its decision that the counterletter was authentic.
In this appeal, although the interpretation of the counterletter is a legal issue, the trial court's findings regarding its authenticity are factual findings, which require the manifest error or clearly wrong standard of appellate review. Because Mr. Murray was an expert witness, the following discussion in Lirette v. State Farm Insurance Company, 563 So.2d 850, 852-853 (La.1990) is applicable:
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. (Citations omitted.)
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. (Citations omitted.)
The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. (Citations omitted.)
When making a manifest error (clearly wrong) fact review, an appellate court is not required to consider the three evidentiary elements of weight, credibility, and inferences in the light most favorable to the prevailing party; the court only must accept reasonable evaluations of credibility and reasonable inferences and may determine if the overall weight of the evidence is clearly wrong. Miley, 599 So.2d at 809.
In the instant case, if we review the entire record, and the testimony of Mr. Murray in particular, pursuant to the rules set forth in Lirette, 563 So.2d at 852-853, we cannot say that the reasons given by Mr. Murray for his conclusion that the signatures were genuine are patently unsound.
Furthermore, we have reviewed the entire record in light of the errors in pretrial and trial procedure alleged in assignments of error numbers 9 through 14. The trial court found that the plaintiffs had responded sufficiently to discovery devices, and Mr. Fredricks has failed to show how these errors, if any existed, prejudiced his defense and amounted to more than harmless error.

CONCLUSION
Having found no error of law or manifest error in the trial court's determination that the purported sale was an absolute simulation, we affirm. We cast Mr. Fredrick with all costs of this appeal.
AFFIRMED.

ON REHEARING
WEIMER, J.
In his application for rehearing, defendant John Lloyd Fredrick clarifies an argument he made in his original brief concerning court costs. Mr. Fredrick points out that, despite the fact that three separate suits had been filed, the Scoggins interests and the Robertson interests had reached a settlement prior to the trial on the merits of the issue raised in the cross claim filed by Mrs. Robertson on May 10, 1994.
The judgment which declared the act of sale a simulation cast Mr. Fredrick with all costs. However, our review of the record *689 leaves us in doubt as to what those costs were. We agree with Mr. Fredrick that he should not be cast for costs associated with the original suits to which he was not a party.
Accordingly, we grant a rehearing for the limited purpose of amending the judgment of the trial court concerning costs. We cast the defendant, Mr. Fredrick, and the succession representative, Billie B. Albritton, with his and her own costs incurred in the litigation of the cross claim for simulation filed on May 10, 1994.
In all other respects, the application for rehearing is denied.
JUDGMENT AMENDED; REMANDED TO ASSESS COSTS. REHEARING OTHERWISE DENIED.
NOTES
[1] Although the petition identified the defendant as "John Lloyd Frederick" the record reveals the correct spelling of the name is "Fredrick."
[2] Mr. Robertson died on December 10, 1981; Mrs. Robertson died on March 20, 1997.
[3] The Scogginses had procured two judgments against the Robertsons in a personal injury lawsuit in the Nineteenth Judicial District Court. The first judgment on September 25, 1979, was for a sum which, with interest, allegedly exceeded $300,000.00. The second judgment on November 27, 1979, entitled "Judgment Denying Application for New Trial with Amendments," contained substantive changes. The Gladney law firm represented the Scogginses in that litigation, which arose from a November 4, 1973 automobile accident.
[4] The minor exception is that the reasons filed in October stated costs would be assessed against Mr. Fredrick, while the reasons filed in November provided that costs be shared. The conflict between the two is immaterial, as the judgment assessed Mr. Fredrick with all costs. Where there is a discrepancy between the judgment and the reasons for judgment, the judgment prevails. Louisiana Insurance Guaranty Association v. International Insurance Company, 551 So.2d 50, 51 (La.App. 1 Cir.1989). Furthermore, there is no merit to Mr. Fredrick's argument that the trial court erred in assessing him with all costs. We note that, "[e]xcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." LSA-C.C.P. art. 1920. The trial court has broad discretion in assessing court costs. Earles v. Ahlstedt, 591 So.2d 741, 747 (La.App. 1 Cir.1991). We do not find the trial court's decision to cast Mr. Fredrick with costs to be inequitable or an abuse of the court's much discretion; therefore, we will not disturb this decision.
[5] In appellant's brief, matters are listed which are referred to as so-called "specifications of error." Counsel for appellant then proceeds to address these so-called specifications of erroroccasionally, individuallybut occasionally in groups of five at a time in random fashion. The brief of appellant, as written, in many areas provides this court little guidance in determining if there was error by the trial court. Nevertheless, we have endeavored to reach the proper result within the confines of the rules. See Uniform Rules, Courts of Appeal, Rule 2-12.4.
[6] Because of the settlement between the other parties, leaving only the action for simulation to be determined at trial, it is unnecessary to discuss this argument.
[7] In Successions of Webre, 247 La. 461, 472, 172 So.2d 285, 288 (1965), the court noted that a simulated sale constitutes an absolute nullity.
[8] Further discussion of Mr. Fredrick's specifications of error numbers 1, 2, 5, 6, 7, 16, 18, and 20, dealing with abandonment and prescription, is unnecessary. Additionally, the sufficiency of Mrs. Robertson's cross claim makes it immaterial whether issue was joined in the suit filed by the Gladney law firm, thus making discussion of assignment of error number 21 unnecessary.
[9] LSA-C.C.P. art. 561 formerly, and at all times relevant to this matter, provided that an action is abandoned after a period of five years.
[10] As mentioned previously, the claims of the original plaintiffs in all other suits are not before us on appeal, and no inferences concerning their claims should be drawn from our holding that Mrs. Robertson's cross claim was neither abandoned nor prescribed.
[11] LSA-C.C. art. 1853 provides:

A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
[12] A judicial admission or confession is a party's express acknowledgment of the correctness of the fact or the act charged against him by his adversary. First Homestead Federal Savings and Loan Association v. Coleman, 446 So.2d 551, 553 (La.App. 3 Cir.1984). Such a confession is designed to dispense with evidence and has the effect of withdrawing the subject matter of the confession from issue. See Jackson, 250 La. at 831, 199 So.2d at 890-891, and our discussion of that case infra.
[13] Mr. Fredrick argues the stipulations made in the pre-trial statement of April 25, 1994, constitute admissions. In Mrs. Robertson's statement of "Defendant's claim and supporting legal authorities," she denies that the sale was a simulation or that it was made to defraud Mr. Robertson's creditors. This statement is no different from the denial referred to in Hyde. However, in the admitted and stipulated facts section of the pre-trial order, the following facts are admitted: that Mr. Robertson sold the land to Mr. Fredrick for $40,000 by cash deed, which was recorded; that the sale was carried out in the offices of a notary public, before the named witnesses and attorneys; that Mr. Robertson was deceased; and that Mrs. Robertson had been a resident of a nursing home for the last three years.

We do not interpret these stipulated facts as admissions which would withdraw the issue from proof at trial. Indeed, the intent of Mrs. Robertson to so bind herself by the stipulation is clearly lacking, especially in light of the "intent of the parties to the sale" being listed as a contested fact in the pre-trial order, along with "[a]ny other facts as a result of conflict within the pleadings or testimony of witnesses."
As discussed previously, even if the pre-trial order contains admissions, Mrs. Robertson would not be bound by them in her cross claim.
[14] LSA-C.C. art. 2026 provides: "A simulation is absolute when the parties intend that their contract shall produce no effects between them. That simulation, therefore, can have no effects between the parties."
[15] Further discussion of Mr. Fredrick's assignments of error numbers 3, 17, and 19, and his exception filed in this court, dealing with proper parties defendant, is unnecessary. Also, the fact that Mr. Fredrick was made defendant in Mrs. Robertson's cross claim makes the fact that he was not named as a party in one of the consolidated suits immaterial.
[16] This assertion is in Mr. Fredrick's assignment of error number 4.
[17] Mr. Fredrick apparently makes this argument pursuant to a "catch-all" assignment of error, number 15, which states: "The Judgment is in error as a matter of fact and law."
[18] In his brief to this court, Mr. Fredrick appears to argue that if the trial court was convinced the cash sale was a simulation, it should have declared it a relative simulation. We find no error in the trial court's rejection of Mr. Fredrick's meager evidence concerning the Robertsons' intention that he have the property, nor in the trial court's acceptance of the counterletter as expressing the true intent of the parties.
[19] Mr. Lemann's thorough treatment of the subject of simulation is cited by Professor Saul Litvinoff in 5 LOUISIANA CIVIL LAW TREATISE, THE LAW OF OBLIGATIONS § 12.97 at 399 (1992), and in the Louisiana Civil Code Revision Comments, LSA-C.C. art. 2026, Comments (b).
[20] Mr. Fredrick's argument that the Robertsons were barred from attacking the cash sale by the doctrine of "clean hands" is clearly without merit as the law specifically provides for an action such as asserted in Mrs. Robertson's cross claim. LSA-C.C. art. 2025, et seq.
[21] Examples of derivatives of the supposed transferor are ordinary heirs and universal successors. A universal successor is defined by LSA-C.C. art. 3506(28) as one who represents the person of the deceased, and succeeds to all his rights and charges. As a universal successor or as administratrix of Mrs. Robertson's estate, Billie B. Robertson had a right to bring the action for simulation following Mrs. Robertson's death. Mr. Fredrick's argument on appeal that only a forced heir could continue the proceedings after Mrs. Robertson's death is clearly contrary to the established law regarding simulation. See authorities cited in Footnote 19. Mr. Fredrick cites no authority for his assertion that an action for simulation was personal to the deceased.
[22] Mr. Fredrick's argument that the Robertson interests could not attack the authentic act of cash sale ("estoppel by deed") is consistent with the rule that testimonial proof is inadmissible as between the parties. However, his argument ignores the rule, that counterletters are effective between the parties, stated in LSA-C.C. art. 2239 (1870) and recognized and enforced by the Louisiana jurisprudence. See LSA-C.C. art. 2026, Comments (b).
[23] Mr. Fredrick admitted his signature on a number of documents, including the errata sheet of his deposition. However, at trial, when asked about his signature to the counterletter, he gave the following answers: "I don't know about this." "I don't think it could be." "I can't go for this one." "That is not mine. I did not write that name."
[24] Although this assignment is not related to Mr. Fredrick's attack on his opponents' expert witness, we have included it here because of the way Mr. Fredrick handled it in his brief. This assignment appears to urge error in the trial court's handling of the testimony of the expert called by Mr. Fredrick. That portion of the transcript was not designated part of the record on appeal. Therefore, there is nothing for us to review in regard to this alleged error.